IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROBERT ALLEN AUTRY,<br>an Incapacitated Person individually,<br>and (2) SANDRA VALENTINE,<br>Individually and as Guardian of<br>Robert Allen Autry,<br><br>   Plaintiffs,<br><br>vs.<br><br>(3) CLEVELAND COUNTY<br>SHERIFF'S DEPARTMENT, and<br>(4) JOSEPH K. LESTER in his<br>OFFICIAL CAPACITY as the<br>SHERIFF of CLEVELAND<br>COUNTY, and (5) BOARD OF<br>COMMISSIONERS of COUNTY OF<br>CLEVELAND, OKLAHOMA, and (6)<br>UNKNOWN JOHN/JANE DOE JAIL<br>PERSONNEL, and (7) TURN KEY<br>HEALTH CLINICS, and (8) ESW<br>CORRECTIONAL HEALTHCARE, LLC,<br>and (9)CINDY BILYEU, Nurse, and (10)<br>RAVEN FUNEZ, Nurse, and (11)<br>DELORIS BROWN, Nurse, and (12)<br>DEANNA WHEELER, Nurse, and (13)<br>JOHN DOE, DO, Individually and<br>In his capacity as Chief Medical Officer, and<br>(14) NORMAN REGIONAL HEALTH<br>AUTHORITY dba NORMAN REGIONAL<br>HOSPITAL, and (15) MARSHALL L. REA,<br>DO, Individually and in his capacity as<br>Agent of Norman Regional Hospital. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. CIV-2015-1167-D<br><br>*Honorable Timothy D. DeGiusti* |

## SECOND AMENDED COMPLAINT

The Plaintiffs Robert Allen Autry and Sandra Valentine both individually and Sandra Valentine as Guardian for Ward Robert Allen Autry for their causes of action against the following Defendants: Cleveland County Sheriff's Department; and Joseph K. Lester in his official capacity as the Sheriff of Cleveland County; and the Board of County Commissioners of the County of Cleveland, State of Oklahoma; and Unknown John and Jane Doe Jail Personnel; and Turn Key Health Clinics; and Turn Key Health Clinics *dba* ESW Correctional Healthcare, LLC; and Cindy Bilyeu, Nurse at CCDC Facility; and Raven Funez, Nurse at CCDC Facility; and Deloris Brown, Nurse at CCDC Facility; and Deanna Wheeler, Nurse at CCDC Facility; Dr. John Doe, Chief Medical Officer of Turn Key Health Clinics; and Norman Regional Health System *dba* Norman Regional Hospital (NRH); and Marshal L. Rea, DO, individually and as an employee of NRH, state as follows:

## I.
## INTRODUCTION

1.    This is a civil action under 42 U.S.C.A. § 1983 seeking monetary damages against Defendants for committing acts under color of law with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States and for refusing or neglecting to prevent such deprivations and denials to Plaintiffs.

2.      This case arises under the Fourth and Fourteenth Amendments of the U.S. Constitution, U.S.C.A §§ 1983 and 1988, and 42 U.S.C.A §1395dd, the Emergency Medical Treatment and Active Labor Act for damages exclusive of costs, expenses and interest of at least ten million ($10,000,000).

## II.
## JURISDICTION

3.      This action is brought pursuant to 42 U.S.C.A. §§ 1983, 1988, 1395dd, and the Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C.A. §§ 1331 and 1343.

4.      This Court has pendent jurisdiction over the state law negligence claim.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because all of the actions complained of took place in this judicial district; evidence, detention, and medical records relevant to the allegations are maintained in this judicial district and all of the witnesses are present in this judicial district.

## III.
## PARTIES

6.      Plaintiff Robert Allen Autry is an individual who was at all times material to this complaint a resident of the State of Oklahoma who may be served with process via the undersigned attorney.

7.   Plaintiff Sandra Valentine is an individual who was at all times material to this complaint a resident of the State of Oklahoma who may be served with process via the undersigned attorney.

8.   Defendant Cleveland County Sheriff's Department was, at all times material to this complaint, a political subdivision of the State of Oklahoma. Service may be had at 128 S. Peters, Norman, Oklahoma, 73069.

9.   Defendant Joseph K. Lester, who at all times relevant was a resident of the State of Oklahoma and was acting under color of state law in his official capacity as the Sheriff of Cleveland County, State of Oklahoma.

10.  The Board of County Commissioners of the County of Cleveland, State of Oklahoma, who at all times relevant were residents of the State of Oklahoma and the County of Cleveland County and acting under color of state law.

11.  Unknown John and Jane Doe jail personnel who were acting under color of state law.

12.  Turn Key Health Clinics, LLC, at all times material to this complaint was the third-party health care provider for pretrial detainees and inmates at the Cleveland County Detention Center (CCDC), and acting under color of state law.

13.   ESW Correctional Healthcare, LLC, at all times material to this complaint was the contract holder to deliver healthcare services to the pretrial detainees and inmates at the CCDC through Turn Key Health Care Clinics.

14.   Cindy Bilyeu, who, at all times relevant, upon information and belief was a resident of the State of Oklahoma, and a nurse employee who provided healthcare to detainees at the CCDC, and acting under color of state law.

15.   Raven Funez, who, at all times relevant, upon information and belief was a resident of the State of Oklahoma, and a nurse employee who provided healthcare to detainees at the CCDC, and acting under color of state law.

16.   Deloris Brown, who, at all times relevant, upon information and belief was a resident of the State of Oklahoma, and a nurse employee who provided healthcare to detainees at the CCDC, and acting under color of state law.

17.   Deanna Wheeler, who, at all times relevant, upon information and belief was a resident of the State of Oklahoma, and a nurse employee who provided healthcare to detainees at the CCDC, and acting under color of state law.

18.   Dr. John Doe, who, at all times relevant, upon information and belief was a resident of the State of Oklahoma, and a medical doctor who supervised the nurse employees who provided healthcare to detainees at the CCDC, and acting under color of state law.

19. Norman Regional Health Authority, a Public Trust *dba* Norman Regional Hospital (NRH) at all times relevant was the emergency health care provider for the Plaintiff Robert Allen Autry, and acting under color of state law.

20. Marshall L. Rea, DO, at all times relevant was a citizen of the State of Oklahoma and was the doctor who provided emergency care to Defendant Robert Allen Autry, and acting under color of state law.

## IV.
## FACTS

21. Robert Autry ("Autry") while a teenager suffered severe trauma to his head from a bull riding accident. The injury left him with injuries to his skull which made sinus infections especially dangerous. His injuries allowed for an untreated sinus infection to cause brain infection.

22. On November 13, 2014, while in the Cleveland County Detention Center ("Jail") as a pretrial detainee in the care and custody of Joseph K. Lester, in his official capacity as the Sheriff of Cleveland County, State of Oklahoma, Autry told his mother Sandra Valentine ("Valentine") that he had contracted a sinus infection.

23. On or about November 14, 2014, Valentine informed the Jail's receptionist that Autry's face was red and swollen, and that from her previous experience

6

with Autry, it was a sinus infection and that he needed immediate medical attention due to his traumatic brain injury ("TBI").

24.  On or about the same date, Valentine was provided with a phone number for the Jail's medical staff. Valentine called the number repeatedly and left multiple messages for the Jail's medical staff regarding Autry's TBI history, her concerns about his untreated sinus infection, and the dangers of an untreated sinus infection in his situation.

25.  On or about November 20, 2014, Autry informed his mother that the Jail's medical staff had given him a pain reliever and fever reducer, namely ibuprofen and naproxen.

26.  On the same day, Valentine requested that the Jail provide her with a HIPAA release and told the medical staff that Autry both needed and would request additional medical care and medication.

27.  On or about November 21, 2014, Autry's face was still red and swollen. Autry had spoken to Jail staff and again informed them of his condition. He requested medical attention and antibiotics. None were provided. Upon information and belief, Autry's request to be taken to the Jail's medical unit was denied.

28.  On or about November 25, 2014, Autry was finally seen by the Jail's medical staff and he informed them of his condition and his previous TBI. Jail staff provided no additional treatment and Autry was returned to his cell.

29.  On or about November 26, 2014, Autry was transported to Norman Regional Hospital ("NRH") emergency room for evaluation. At NRH Autry was examined by Dr. Marshall L. Rea. Autry was subsequently released, not to another medical facility, but back to the care and custody of the Jail without receiving any antibiotics or receiving any other stabilizing care.

30.  On or about December 1, 2014, Jail staff called Valentine and informed her that she needed to provide a medical release for emergency surgery.

31.  Jail staff told Valentine that Autry had been found unconscious in his cell and had been transported back to NRH.

32.  Valentine repeatedly requested to be with her son at the hospital but the Jail staff forced her to leave the hospital without ever seeing her son.

33.  On December 1, 2014, Autry underwent his first emergency brain surgery at NRH in an effort to save his life. Autry had a serious bacterial infection in his brain as a result of an untreated sinus infection.

34.  The first surgery included a craniectomy (to open his skull), an incision (to allow drainage of pus material), and placement of a shunt (to reduce intracranial pressure).

35.    On December 3, 2014, with an attorney's assistance, Valentine obtained a court Order permitting her to see her son in the hospital. However, the Jail discharged Autry from the Jail's custody making the court order moot.

36.    On or about December 5, 2014, in further efforts to save Autry's life, doctors at NRH had to perform a second emergency surgery on Autry. This surgery included enlargement of the skull opening, a brain biopsy, and surgical drainage.

37.    On December 12, 2014, Autry underwent a series of operations on his gastrointestinal system including the placement of a PEG feeding tube.

38.    On December 13, 2014, Autry had breathing problems that required an operation to insert a breathing tube through his trachea.

39.    On December 18, 2014, Autry's cranial monitoring probe was replaced.

40.    On January 14, 2015, Autry's treating physician determined that Autry was totally incapacitated from a brain injury resulting from a brain abscess and subdural empyema (the collection of pus inside the brain resulting from infection) and that Autry would likely never return to an independent state.

41.    A FOIA Request letter was delivered to the Cleveland County Sheriff's Department on January 28, 2015.  The denial of the request was dated February 5, 2015.

**V.**
**CAUSE OF ACTION – COUNT 1**

**Constitutional and Civil Rights Violation of 42 U.S.C. § 1983**
**Fourth Amendment Duty to Provide Adequate Care for Pretrial**
**Detainee**

42.     Plaintiff Autry incorporates by reference paragraphs 1 through 39 as if fully
        stated herein.

43.     Joseph K. Lester, in his official capacity as the Sheriff of Cleveland County,
        State of Oklahoma, and acting under color of state law has deprived Plaintiff
        Autry of his federal constitutional rights by failing to provide Autry with
        appropriate medical care.

44.     Autry was a pre-trial detainee and the Sheriff had the obligation under the
        Due Process guarantees of the Fourth and the Fourteenth Amendment to
        provide appropriate and necessary medical care to Autry.

45.     The Sheriff's failure to ensure such care constituted a form of punishment
        imposed on a person not convicted of a crime, which is impermissible.

46.     Autry had a serious medical need, which Autry communicated to the Sheriff.
        Further, Valentine communicated the same need to the Sheriff and provided
        medical records to the Jail while requesting that Autry be given proper
        treatment for sinus infection.

47.     The Sheriff and the Jail were on actual notice that Autry had a medical
        condition that required proper treatment, and therefore knew about Autry's
        need for medical care.

10

48.     The Sheriff intentionally or deliberately failed to provide required treatment for Autry's serious need. The Sheriff ignored the requests for proper medical care. The Sheriff delayed the requests for proper medical care. After Autry received treatment, which was improper and therefore ineffective, the Sheriff delayed further appropriate medical treatment until it was too late, even as Autry's condition continued to deteriorate. The Sheriff's failure to provide proper medical care was the textbook definition of deliberate indifference.

49.     This course of improper treatment and the delay in receiving proper treatment resulted in Autry suffering unneeded pain, suffering, and ultimately in a serious medical injury resulting in permanent incapacitation where Autry had portions of his brain removed from an un- or misdiagnosed and untreated sinus infection that progressed to his brain with tragic results.

50.     Joseph K. Lester, in his official capacity as the Sheriff of Cleveland County, and acting under color of state law had the duty and the obligation to ensure that pretrial detainees held in his care received the proper medical treatment when it was necessary. The failure to properly provide medical care after receiving actual notice of the need as well as the delay in administering proper care, constituted deliberate indifference to the needs and rights of a pretrial detainee.

11

51.   Autry's injuries were a foreseeable and preventable event, directly and proximately caused by the Sheriff's personnel whose conduct displayed unreasonableness and deliberate indifference to the substantial risk of harm to Autry. As a result, the Plaintiffs shuld recover actual damages allowed by law. Additionally, Plaintiffs contend that the actions of the Sheriff and his personnel by their actions and omissions constitutes gross negligence, and more specifically malice. As a result, the Plaintiff is entitled to punitive damages.

### CAUSE OF ACTION – COUNT 2
### Constitutional and Civil Rights Violation of 42 U.S.C. § 1983
### Fourth Amendment Duty to Propagate Policies, Procedures and Training to Provide Adequate Care for Pretrial Detainee

52.   Plaintiff Autry incorporates by reference paragraphs 1 through 50 as if fully stated herein.

53.   Defendant Board of Commissioners of Cleveland County, and Joe K. Lester, in his official capacity as the Sheriff, and acting under color of state law have deprived Plaintiff of his federal constitutional rights by failing to propagate appropriate standards, policies, training, and procedures to ensure that pretrial detainees entitled to appropriate and necessary medical care receive such treatment while in the care and custody of the Sheriff.

54.   Upon information and belief, the Policies and Procedures handbook that governs the care of people temporarily or permanently in the custody of the Sheriff makes no distinction between pretrial detainees and inmates. Further, the lack of proper training by jail personnel to not ignore a serious medical need, and the lack of proper training to communicate a serious medical need to appropriate medical care provider, especially when on actual notice, results in the denial of appropriate medical care and further constitutes structural deliberate indifference.

55.   Autry was a pretrial detainee. The State had a constitutional duty to provide adequate medical treatment. The relevant standard for a claim of inadequate provision of medical care for an arrestee who has not had a probable cause hearing comes from the Fourth Amendment.

56.   Autry put the jail on notice that he had a condition that could result in devastating harm if left untreated. Autry was treated with improper medication that allowed his condition to worsen. Valentine also attempted to communicate the seriousness of the condition to the Sheriff through jail personnel. The jail personnel and the medical staff within the jail, failed to heed the information resulting in a delay of proper treatment. Despite Autry's worsening condition which went unrecognized until it was too late, the Sheriff's staff either failed to recognize or chose to ignore the situation.

57.   Autry alleges failure and delay of appropriate medical action is a result of

lack of proper training, a failure to propagate proper policies and procedures

which includes their failure to properly communicate the serious risk faced

by Autry with improper treatment. Autry's injuries were a foreseeable and

preventable event, directly and proximately caused by the Sheriff's

personnel, acting under color of state law whose improper training and

inadequate policies and procedures displayed unreasonableness and resulted

in deliberate indifference to the substantial risk of harm to Autry. As a result,

the Plaintiff can recover actual damages allowed by law. Additionally,

Plaintiff contends that the actions of the Sheriff and his personnel by their

actions and omissions constitutes gross negligence, and more specifically

malice. As a result, the Plaintiff is entitled to punitive damages.

**CAUSE OF ACTION – COUNT 3**
**Constitutional and Civil Rights Violation of 42 U.S.C. § 1983**
**Fourth Amendment Duty for Contract Jail Medical Provider to Provide**
**Adequate Care for Pretrial Detainee**

58.   Plaintiff Autry incorporates by reference paragraphs 1 through 55 as if fully

stated herein.

59.   Upon information and belief, Turn Key Health Clinic, LLC ("Turn Key"),

ESW Correctional Healthcare, LLC ("ESW"), Cindy Bilyeu ("Bilyeu"),

Raven Funez ("Funez"), Deloris Brown ("Brown"), Deanna Wheeler

("Wheeler"), and John Doe, DO ("Doe"), all of whom acting under color of state law were contract medical providers to Autry while he was in the care and custody of the Sheriff in Cleveland County. The state has a constitutional duty to provide adequate medical treatment to those in its custody, and constitutional claims may be brought against medical care providers, regardless of the precise terms of their employment when they voluntarily assume that obligation by contract.

60.    Turn Key delivered healthcare to Autry. ESW held the contract to deliver healthcare to the Sheriff's jail and upon information and belief, delivered that healthcare to Autry.

61.    Upon information and belief Wheeler, Brown, Funez, and Bilyeu were nurses employed by Turn Key and delivered medical care to Autry. Upon information and belief the nurses operated under the direction of the Chief Medical Officer John Doe, DO. Autry had a constitutional right to appropriate medical care. The contract medical providers had a duty to provide appropriate medical care to pretrial detainees at the Jail where Autry was detained. The contract medical providers, despite being on notice of Autry's potentially life-threatening condition, ignored the risks by ignoring his requests for additional medical treatment.

62.    Autry told Valentine that he was sick on November 13, 2014.

15

63.     Valentine notified the jail receptionist that Autry needed medical treatment on November 14, 2014 due to his red and swollen face and prior traumatic brain injury ("TBI"). Valentine was given a number for the contract medical staff. Valentine called and left messages on the medical staff phone recorder regarding his TBI and the danger of sinus infections.

64.     On November 20, 2014, Autry told Valentine that he was receiving ibuprofen and naproxen. Autry intended to ask for more medicine. Valentine inquired about a HIPAA release and was told that she would receive one.

65.     On November 21, 2014, Autry spoke to jail personnel about additional medication but action was delayed and Autry had not been seen in the jail dispensary/infirmary.

66.     On November 25, 2014, Autry saw medical staff in the jail dispensary/infirmary, but no further recommendation was made regarding additional treatment.

67.     On November 26, 2014, Valentine offered to provide medical records to jail staff for proper treatment.

68.     On November 29, 2014, Autry was rushed to NRH for evaluation, and despite signs of infection, notice of his prior TBI, and headache, Autry was discharged from the hospital with no further recommendation regarding the infection.

69.    On December 1, 2014, Autry was rushed back to NRH for emergency brain
       surgery. Valentine was called to sign a medical release after Autry was
       found unconscious in his cell. Deputies refused to allow Valentine in the
       same room with her son and they forced her to leave the hospital.

70.    The contract medical providers in the jail ignored Autry's requests for
       additional and proper medical treatment. The contract medical providers
       delayed the initiation of proper care. The contract medical providers were on
       notice that Autry had a prior TBI and that the risks of infection were
       dangerous. Despite knowledge of Autry's risk, the contract medical
       providers continued to improperly treat Autry. The contract medical
       providers prescribed a pain reliever and an anti-inflammatory agent
       (ibuprofen and naproxen) which masked the symptoms of the sinus infection
       including but not limited to fever, pain, and facial redness associated with
       the sinus infection.

71.    The contract medical providers also delayed in approving a transfer to the
       NRH emergency room or any other hospital.

72.    The failure to provide appropriate medical care within the jail by the
       contract medical provider constituted a deliberate indifference to the health
       and well-being of Autry and denied him the appropriate medical care that
       was his Constitutional right.

73.   Autry alleges the failure and delay of appropriate medical action by the contract medical providers, all of whom were acting under color of state law, is a result of a deliberate indifference to his health and well-being because of his incarceration. A lack of proper training, a lack of proper supervision by Dr. John Doe, a failure to propagate proper policies and procedures, which includes the failure to properly communicate the serious risk faced by Autry with improper treatment all contributing to deny Autry his Constitutionally protected right to adequate healthcare as a pretrial detainee. Autry's injuries were a foreseeable and preventable event, directly and proximately caused by the inadequate care administered by the contract medical provider. The end result of the deliberate indifference was an unnecessary, unreasonable injury life-changing injury that resulted in permanent harm to Autry. As a result, the Plaintiff can recover actual damages allowed by law. Additionally, Plaintiff contends that the actions of the Jail's contract medical provider and their personnel by their actions and omissions constitutes gross negligence, and more specifically malice. As a result, the Plaintiff is entitled to punitive damages.

## CAUSE OF ACTION – COUNT 4
### Constitutional and Civil Rights Violation of 42 U.S.C. § 1983
### Pretrial Detainee Right to Adequate Medical Care

## Statutory Violation of Emergency Medical Treatment and
## Active Labor Act 42 U.S.C § 1395dd

74.    Plaintiff Autry incorporates by reference paragraphs 1 through 72 as if fully
       stated herein.

75.    Norman Regional Health Authority, a Public Trust, *dba* Norman Regional
       Hospital ("NRH") and acting under color of state law was the medical
       provider that housed the emergency room where Autry was transported to
       due to his worsening symptoms on November 29, 2014. Marshall L. Rea,
       DO ("Rea"), was the physician who treated Autry at NRH and was acting
       under color of state law.

76.    Rea failed to obtain a thorough medical and surgical history of Autry, failed
       to perform a proper physical examination, failed to order appropriate
       laboratory tests, failed to order x-rays of sinuses, failed to assess Autry's
       condition in light of the signs and symptoms and history of TBI, and had no
       plan of action for Autry. Rea failed to prescribe appropriate medication
       and/or admit Autry in the hospital for further diagnostic procedures and
       treatment. Further, Rea failed to stabilize Autry and failed to refer him to
       another medical facility, instead discharged Autry back to the Jail.

77.    Autry was a pretrial detainee in the care and custody of the Cleveland
       County Sheriff at the time of his examination. Autry had the Constitutional

19

right to adequate medical care and NRH and Rea had the duty to provide

adequate medical care, to stabilize Autry or to refer Autry to another

healthcare facility.

78.   The Emergency Medical Treatment and Active Labor Act ("EMTALA") is a

statute which governs when and how a patient may be treated and/or

transferred when he is in an unstable medical condition. The purpose of the

statute is to prevent hospitals from rejecting patients, refusing to treat them,

or transferring them to charity hospitals because of an inability to pay.

79.   The essential provisions include the requirement to treat any patient who

comes to the emergency department requesting an examination or treatment

for a medical condition and providing an appropriate medical screening

examination to determine if he is suffering from an emergency medical

condition. Patients should not be discharged if they are not stabilized.

80.   An emergency medical condition provided under statute is a medical

condition manifesting itself by acute symptoms of sufficient severity

(including severe pain) such that the absence of immediate medical attention

could reasonably be expected to result in… serious impairment to bodily

functions, or serious dysfunction of any bodily organ or part….

81.   Autry, under EMTALA, was entitled to an appropriate medical screening

examination to determine whether he was suffering from an emergency

medical condition. Autry was examined and discharged from NRH without being stabilized or transferred to another medical facility.

82.   By inference, because Autry was returned to the hospital in a coma with a growing collection of pus between layers of his brain less than two days after his discharge, Autry was not stabilized when he was discharged, nor was he transferred to another medical facility to treat his infection.

83.   Autry was inappropriately screened by the emergency medical department of NRH. Autry was inappropriately treated while at NRH. As a pretrial detainee examined by NRH, Autry was given a substandard care that departed from what a "normal ad non-detained" paying patient would have received which caused catastrophic effects. While Autry received care at NRH, his care departed from the ordinary standard of care, and his diagnosis presents the appearance of deliberate indifference where the doctor had access to his history, ignored or neglected his symptoms, and failed to properly treat Autry with catastrophic effect.

84.   Under EMTALA, a civil penalty of $50,000 attaches to each provider, NRH and the doctor, for violations of the Act.

85.   Constitutionally, Autry alleges the failure and delay of appropriate medical action by NRH and Rea is a result of a deliberate indifference to his health and well-being because of his incarceration. A lack of proper training and

21

care which includes the failure to properly treat Autry, combined with the knowledge that the doctor had all of the information at his disposal when Autry first presented himself to the hospital demonstrates that Autry was denied his Constitutionally protected right to adequate healthcare as a pretrial detainee. Autry's injuries were a foreseeable and preventable event, directly and proximately caused by the inadequate care administered by the NRH and their doctor under color of law. The end result of the deliberate indifference was an unnecessary, unreasonable injury life-changing injury that resulted in permanent harm to Autry. As a result, the Plaintiff can recover actual damages allowed by law. Additionally, Plaintiff contends that the actions of NRH and Rea by their actions and omissions constitutes gross negligence, and more specifically malice. As a result, the Plaintiff is entitled to punitive damages.

## CAUSE OF ACTION – COUNT 5
### State Law Violation

86.   Plaintiffs incorporate by reference paragraphs 1 through 84 as if fully stated herein.

87.   Defendants Doe and Rea are doctors of osteopathy and practice medicine in several medical facilities. As physicians they have a duty to provide a standard of care for their profession to their patients regardless of the social

status of their patients. Both Doe and Rea owed Autry a duty of care and they failed to provide reasonable and standard medical care and services to Autry.

88. As a direct and legal failure of Doe and Rea inclusive, and each of them, to properly and timely diagnose and treat Autry and to meet the standard of care reasonably required in the profess among other things.

89. Plaintiffs are informed and believe and thereon allege that Autry's injuries have resulted in permanent disability and disfiguration to him, all to his general damage in an amount in excess of the minimum jurisdiction of the courts.

90. Plaintiff further alleges that as a proximate result of said negligence of the defendants, and each of them, Autry is and will be required to employ now and in the future, physicians and surgeons to examine, treat, and care for him, and has and will incur in the future medical and incidental expenses. The exact amount of the expense is unknown to Autry and Valentine at this time, but is in excess of the minimal jurisdiction of the court. Plaintiffs will seek leave to amend their pleadings to set forth the exact amount thereof when the same is ascertained by them.

**VI.**
**Damages**

23

91.    Plaintiff incorporates by reference paragraphs 1 through 88 as if fully stated herein.

92.    As a direct and proximate result of the Defendants' conduct and/or omissions, Plaintiff Autry has suffered injuries and damages, for which he seeks compensation thereby, in an amount in excess of ten million dollars ($10,000,000.00), including but not limited to the following:

a.    Reasonable medical care and expenses in the past and future. These expenses were incurred by the subject of this lawsuit, for the necessary care and treatment of the injuries resulting from the incidents complained of herein and such charges are reasonable and were usual and customary charges for such services;

b.    Mental anguish in the past and future;

c.    Emotional distress (past and future);

d.    Physical discomfort;

e.    Inconveniences;

f.    Nominal damages;

g.    Reimbursement of all out-of-pocket expenses;

h.    Other damages to be set forth at the conclusion of discovery; and

i.    Punitive damages

| | Sandra Valentine | David Autry |
|---|---|---|

| Lost Wages to date | $79,950.55 | $34,342.86 |
|---|---|---|
| Future Lost wages | $690,003.60 | $723,428.57 |
| Medical | $0.00 | $208,392.75[1] |
| Future Medical | $30,000.00 (est.) | $3,400,000.00 |
| Pain & Suffering | $5,000,000.00 | $5,000,000.00 |
| Subtotals | $5,799,954.15 | $9,157,771.43 |
| Punitive | $2,000,000.00 | $2,000,000.00 |
| Totals | $7,799,954.15 | $11,157,771.43 |

93. Defendants conduct was in reckless disregard for the safety of the public and warrants a punitive damage verdict to punish and deter Defendants, and others similarly situated, from engaging in similar dangerous behavior or making other similar reckless decisions that disregard the safety of all Oklahomans.

94. Plaintiffs sue all Defendants for the actual damages to which he is entitled.

95. Plaintiff Sandra Valentine sues for the mental anguish and suffering, loss of companionship, maintenance, support, advice, counsel, contribution of both a pecuniary and non-pecuniary nature, society affection and comfort she would have had with her son had he not been so grievously and permanenrly crippled both physically and mentally.

96. Sandra Valentine is also the Guardian of Robert Autry. As such, she sues for Robert Autry's current and future physical pain, mental anguish, emotional

---

[1] Does not include medical expenses from Norman Regional Hospital which are not in our possession.

distress and medical expenses.

97.    Plaintiffs also sue the Individual Defendants for exemplary damages.

## VII.

### Section 1988- Attorneys' Fees

98.    Plaintiffs incorporate by reference paragraphs 1 through 48 as if fully stated

herein.

99.    The Plaintiffs have been forced to retain counsel to prosecute this section 1983

claim.   Pursuant to 42 U.S.C. § 1988, Plaintiffs hereby request that they be

awarded reasonable attorney's fees and costs incurred in prosecuting this

action.

## VIII.

### Jury Demand

100.   Plaintiffs hereby demand a trial by jury of all issues contained herein.

## IX.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final

trial hereof, they recover their damages against all Defendants as alleged above, for

attorneys' fees, or prejudgment interest at the maximum allowable rate from the

date of the incident until the time of trial and for interest from the date of judgment

until it is paid, for other interests, costs of suit, and such other and further relief, at

law and in equity, to which they may show themselves justly entitled..

Respectfully submitted,

*/s/* M. Mark Myles
M. Mark Myles, OBA#22243
M. Mark Myles, PC
4312 N. Classen Blvd.
Oklahoma City, OK 73118
405-466-5290 Tel.
800-580-1977  Fax
mm_myles@outlook.com

## NOTICE OF ELECTRONIC FILING

I, M. Mark Myles, do hereby certify that I have electronically submitted for

filing, a true and correct copy of the above and foregoing Complaint in accordance

with the Electronic Case Files System of the Western District of Oklahoma on the

6th day of September, 2015.

/s/ M. Mark Myles
M. Mark Myles

.