IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT ALLEN AUTRY, an Incapacitated Person individually, *et al.*, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. CIV-15-1167-D |
| CLEVELAND COUNTY SHERIFF'S DEPARTMENT, *et al.*, | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is the Motion to Dismiss of Defendant Joseph Lester, as Sheriff of Cleveland County [Doc. No. 52], filed pursuant Fed. R. Civ. P. 12(b)(6). Sheriff Lester asserts that the Second Amended Complaint fails to state a claim against him under 42 U.S.C. § 1983 by Plaintiff Robert Allen Autry or his mother, Plaintiff Sandra Valentine. Plaintiffs have responded in opposition to the Motion, and Sheriff Lester has replied. Thus, the Motion is fully briefed and at issue.

**Factual and Procedural Background**

Plaintiffs bring § 1983 claims against Sheriff Lester, in his official capacity only, for his alleged failure on behalf of Cleveland County to provide medical care to Mr. Autry while he was a pretrial detainee in the Cleveland County Detention Center or jail. Plaintiffs originally sued the sheriff's department and others who are no longer parties. *See* Compl. [Doc. No. 1] at 1 & ¶¶ 7-11. A scheduling order was entered on June 23, 2016. On January 4, 2017, more than four months after the original deadline, Plaintiffs

added Sheriff Lester and the Board of County Commissioners of Cleveland County, as well as numerous medical care providers, as defendants. In February 2017, Plaintiffs voluntarily dismissed the sheriff's department and the Board of County Commissioners pursuant to Fed. R. Civ. P. 41. *See* Stipulation [Doc. No. 54]. The Court dismissed the unidentified "John Doe" defendants for lack of service. *See* 4/6/17 Order [Doc. No. 33]; 4/25/17 Order [Doc. No. 65]; 6/1/17 Order [Doc. No. 82]. The remaining defendants have also filed motions to dismiss, which will be addressed by separate orders.

Plaintiffs assert in Count I that they "communicated to the Sheriff" and "[t]he Sheriff and the Jail were on actual notice" of a serious medical need due to Mr. Autry's pre-existing medical condition from a prior head injury, but that "[t]he Sheriff intentionally or deliberately failed to provide required medical treatment" of a sinus infection, "ignored requests for proper medical care," and delayed "appropriate medical treatment until it was too late." *See* Second Am. Compl. [Doc. No. 49], ¶¶ 46-48. The factual allegations of Plaintiffs' pleading, as well as argument in their brief, confirm that any communications and notice, as well as any failure to provide timely medical treatment, occurred through jail employees and medical staff. *See id*. ¶¶ 23-28, 30-31; Pls.' Resp. Br. [Doc. No. 62] at 3-4. Plaintiffs do not contend Sheriff Lester personally participated in the events involving Mr. Autry. Plaintiffs allege that the "improper treatment and the delay in receiving proper treatment resulted in Autry suffering unneeded pain, suffering, and ultimately in a serious medical injury resulting in permanent incapacitation where Autry had portions of his brain removed from an un- or misdiagnosed and untreated sinus

infection that progressed to his brain with tragic results." *See* Second Am. Compl. [Doc. No. 49], ¶ 49. Plaintiffs claim "[t]he failure to properly provide medical care after receiving actual notice of the need as well as the delay in administering proper care, constituted deliberate indifference to the needs and rights of a pretrial detainee." *Id*. ¶ 50.

In Count II, Plaintiffs assert that Sheriff Lester (and the Board of County Commissioners, which has now been dismissed) "deprived Plaintiff [Autry] of his federal constitutional rights by failing to propagate appropriate standards, policies, training, and procedures to ensure that pretrial detainees entitled to appropriate and necessary medical care receive such treatment while in the care and custody of the Sheriff." *Id*. ¶ 53. Plaintiffs claim that the denial of medical care to Mr. Autry by jail personnel and medical staff as alleged in Count I was the result of a deficient medical care policy and a lack of proper training "to not ignore a serious medical need" and "to communicate a serious medical need to appropriate medical care provider[s]." *Id*. ¶¶ 54, 56-57.

For relief on these claims, Plaintiffs seek to recover "actual damages allowed by law" and punitive damages. *Id*. ¶¶ 51, 57. Plaintiffs' pleading includes an itemized list of damages that includes, as to both Plaintiffs, lost wages (past and future), medical expenses, and pain and suffering. *Id*. ¶ 92. Ms. Valentine states that her damages include a "loss of companionship, maintenance, support, advice, counsel, contribution of both a pecuniary and non-pecuniary nature, society affection and comfort she would have had with her son had he not been so grievously and permanenrly [sic] crippled both physically and mentally." *Id*. ¶ 95.

**Sheriff Lester's Motion**

Sheriff Lester seeks dismissal of Count I on the ground that an official-capacity claim against him is a claim against Cleveland County and requires proof of an official policy or custom that caused the alleged injury to Mr. Autry.[1] Sheriff Lester asserts that the factual allegations of the Second Amended Complaint show Plaintiffs seek to impose liability on Cleveland County for the alleged acts or omissions of unidentified jail personnel or medical staff and Plaintiffs fail to allege the existence of any policy or custom that would support county liability. Sheriff Lester seeks dismissal of Count II on the ground that the Second Amended Complaint lacks sufficient factual allegations to establish § 1983 liability based on a deficient policy or failure to train jail staff regarding medical needs of detainees. Sheriff Lester also seeks dismissal of any claim brought by Ms. Valentine individually, arguing that she cannot recover under § 1983 for a loss of consortium or any loss from a violation of Mr. Autry's constitutional rights, and that she has not alleged any violation of her own right.[2]

---

[1] It is well settled that "a claim against [a sheriff] in his official capacity . . . is the same as bringing a suit against the county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). A county is not liable under § 1983 simply because its employees caused injury; a plaintiff must show an established policy or custom was a direct cause of his injury. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015); *Moss v. Kopp*, 559 F.3d 1155, 1168-69 (10th Cir. 2009).

[2] Sheriff Lester raises an additional issue of whether punitive damages are recoverable. For reasons discussed *infra*, the Court finds it unnecessary to reach the issue of proper damages on a § 1983 claim against Cleveland County. Otherwise, the Court would find that Sheriff Lester's Motion is not a proper vehicle for challenging the propriety of punitive damages because a Rule 12(b)(6) motion tests the sufficiency of a claim. "'[T]he prayer for relief is no part of the cause of action and . . . the parties are entitled to such relief and to such judgment as the complaint . . . makes out.'" *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 901 (10th Cir. 2011) (quoting *Daniels v. Thomas*, 225 F.2d 795, 797 & n.5 (10th Cir. 1955).

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id*. at 679; *see also Robbins*, 519 F.3d at 1248. "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." *See Robbins*, 519 F.3d at 1249-50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090,

1104 (10th Cir. 2009). "[I]t is incumbent upon a plaintiff to 'identify specific actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)) (emphasis added by the court in *Pahls*).

## Discussion

### A. Sheriff Lester's § 1983 Liability – Official Policy

Plaintiffs agree their suit against Sheriff Lester is a suit against Cleveland County and they "are required to establish the existence of a policy or custom by which [Mr. Autry] was denied a constitutional right, and a direct causal link between the policy or custom and the injury alleged." *See* Pls.' Resp. Br. [Doc. No. 62] at 6-7. Plaintiffs argue, based on facts not alleged in their pleading and without any reference to the Second Amended Complaint, that there have been multiple incidents of critical injury or death of Cleveland County jail inmates, thus suggesting a policy or custom "that allows inmates to develop life-threatening conditions without timely intervention that rises or could rise to the level of deliberate indifference." *Id*. at 7. Plaintiffs concede that the nature of the allegedly inadequate jail policy "is not completely clear" but in Mr. Autry's case "relates to the transfer of relevant and important medical information about the inmate to appropriate medical staff." *Id.* Plaintiffs contend they have been denied access to information and discovery that would permit more detailed factual allegations, and their pleading should be deemed sufficient, particularly in light of Mr. Autry's incapacity. *Id*. at 7-8.

Upon examination of the Second Amended Complaint, the Court finds only conclusory allegations that an inadequate policy regarding medical care for county jail inmates may have existed.[3] Plaintiffs fail to allege sufficient facts from which to identify a deficient policy or practice or to suggest that any such deficiency caused Mr. Autry to be denied medical treatment. The factual allegations of the Second Amended Complaint address only the deprivation of Mr. Autry's constitutional right as a pretrial detainee to adequate medical attention.

The facts stated in the Second Amended Complaint, which are accepted as true, show that Mr. Autry suffered an accidental head injury as a teenager that "made sinus infections especially dangerous" because it allowed "an untreated sinus infection to cause brain infection." *See* Second Am. Compl. [Doc. No. 49], ¶ 21. While Mr. Autry was detained in the county jail, he told his mother on November 13, 2014, that he had a sinus infection, and she "informed the Jail's receptionist" the next day that "he needed immediate medical attention due to his traumatic brain injury ('TBI')." *Id*. ¶ 23. Ms. Valentine "was provided with a phone number for the Jail's medical staff" the same day and she "called the number repeatedly and left multiple messages for the Jail's medical staff regarding Autry's TBI history . . . and the dangers of an untreated sinus infection in his

[3] Plaintiffs allege, upon information and belief in Count II, that the jail's "Policies and Procedures Handbook . . . makes no distinction between pretrial detainees and [convicted] inmates" and "[t]he relevant standard for a claim of inadequate provision of medical care for an arrestee . . . comes from the Fourth Amendment." *Id*. ¶¶ 54-55. The significance of this lack of distinction is not explained in Plaintiffs' brief. Case law holds that a pretrial detainee's right to medical care arises from the Due Process Clause of the Fourteenth Amendment but the deliberate indifference standard of the Eighth Amendment applies. *See, e.g., Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014); *Martinez*, 563 F.3d at 1088.

situation." *Id.* ¶ 24. Mr. Autry received only medications for pain and fever. A week later, on November 20, 2014, Ms. Valentine told "the medical staff" that Mr. Autry needed additional care and on November 21, 2014, Mr. Autry spoke with the "Jail staff" about his condition and "requested medical attention and antibiotics," which were denied. *Id.* ¶¶ 25-27. On November 25, 2014, "Autry was finally seen by the Jail's medical staff and he informed them of his condition and his previous TBI," but he received no additional treatment. *Id.* ¶ 28. On November 26, 2014, he was transported to a hospital emergency room, but was examined and returned to the jail "without receiving any antibiotics" or "other stabilizing care." *Id.* ¶ 29. On December 1, 2014, Mr. Autry lost consciousness and was transported back to the hospital, where he underwent emergency brain surgery. It was determined that "Autry had a serious bacterial infection in his brain as a result of an untreated sinus infection." *Id.* ¶ 33. A second emergency surgery was performed on December 5, 2014, and Mr. Autry then underwent a series of operations and procedures to place a feeding tube, insert a tracheal tube, and replace a cranial monitoring probe. In January 2015, Mr. Autry was determined to be "totally incapacitated from a brain injury" and "would likely never return to an independent state." *Id.* ¶ 40.

From these facts, no deficient jail policy or custom can be discerned, and no causal connection between a policy and Mr. Autry's injury is apparent. These omissions are fatal to any § 1983 claim against Sheriff Lester in his official capacity.[4] Plaintiffs' argument

[4] *See, e.g.*, *Schneider v. City of Grand Junction Police Dep.'t*, 717 F.3d 760, 769 (10th Cir. 2013) ("the longstanding interpretation of § 1983's standards for imposing municipal liability" under *Monell v. Department of Social Services*, 436 U.S. 658, 691-92, 694 (1978), requires "that a plaintiff must identify a government's policy or custom that caused the injury" and "show that

that they should be permitted to obtain through discovery the necessary facts to support a basis of county liability lacks any citation of legal authority or any support in existing law. Their argument is contrary to case law holding that a plaintiff must satisfy the pleading standard of Rule 8(a) to "unlock the doors of discovery." *See Iqbal*, 556 U.S. at 678-79; *Ghailani v. Sessions*, 859 F.3d 1295, 1303-04 (10th Cir. 2017).

For these reasons, the Court finds that Plaintiffs fail to state in Count I of their Second Amended Complaint a § 1983 claim against Sheriff Lester based on a denial of medical care to Mr. Autry.

**B. Sheriff Lester's § 1983 Liability – Inadequate Training**

Plaintiffs arguably assert another theory of county liability in Count II of the Second Amended Complaint: "the lack of proper training [of jail personnel] to communicate a serious medical need to [an] appropriate medical care provider" resulted in a denial of necessary medical care to Mr. Autry and "constitutes structural deliberate indifference." *See* Second Am. Compl. [Doc. No. 49], ¶ 54. Plaintiffs claim they "attempted to communicate the seriousness of [Mr.] Autry's condition to . . . jail personnel" but his worsening condition "went unrecognized" and "the Sheriff's staff either failed to recognize or chose to ignore the situation." *Id.* ¶ 56. In their brief, Plaintiffs cite *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), which held that inadequate training of employees may

---

the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury") (internal quotations omitted) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton v. Harris*, 489 us 378, 389 (1989)); *id.* at 770 (for causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right") (internal quotation omitted).

result in municipal liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *See* Pl.'s Resp. Br. [Doc. No. 62] at 8. "A municipality can be liable where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Schneider*, 717 F.3d at 773 (quoting *City of Canton*, 489 U.S. at 390).

Upon consideration, the Court finds that the Second Amended Complaint states sufficient facts to suggest that poor communication among jail personnel or medical staff regarding Mr. Autry's medical history and his susceptibility to injury from an untreated sinus infection, may have contributed to a delay in treatment. Only pure speculation, however, would permit any inference that a lack of communication was the result of improper training. Where a § 1983 claim rests on inadequate training, "a plaintiff must identify a specific deficiency that was obvious and was closely related to his injury, so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (internal quotations omitted; citing *City of Canton*, 489 U.S. at 385); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Supreme Court has observed:

> A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a

> particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 62 (internal quotations and citations omitted).

In this case, Plaintiffs allege no facts to show that a possible need for more or different training regarding communication of medical information was so likely to result in the violation of a detainee's right to medical care that Sheriff Lester can reasonably be said to have been deliberately indifferent to the constitutional rights of jail inmates, or that a lack of training was the moving force behind Mr. Autry's injury. Even the additional facts argued in their brief fail to cure this deficiency. The Court therefore finds that Plaintiff's allegations regarding inadequate training of jail personnel fail to state a plausible § 1983 claim against Sheriff Lester.

**C. Plaintiff Sandra Valentine's § 1983 Claim**

Sheriff Lester asserts that damages under Section 1983 must be based on a violation of a plaintiff's individual rights and that Ms. Valentine cannot recover for any constitutional deprivation suffered by her son. It is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). Plaintiffs do not disagree with this proposition but, instead, argue in a conclusory fashion in their brief that "Valentine alleges a substantive due process claim based on the violation of her right to familial companionship and society." *See* Pls.' Resp. Br. [Doc. No. 62] at 9.

Although Plaintiffs cite no legal support for this theory, the Court is aware of case law recognizing a substantive due process right of familial association. *See, e.g., Griffin*

*v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993). Substantive due process rights "refer to 'substantive liberties of the person,' such as 'personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education.'" *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1568 (10th Cir. 1993) (quoting *Planned Parenthood v. Casey*, 505 U.S. 833, 853 (1992)). The concept also "acts substantively to restrain the state from the 'affirmative abuse of power.'" *Id.* (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). The Court finds in Plaintiffs' argument and the alleged facts of the Second Amended Complaint, no basis to support a substantive due process claim of Ms. Valentine based on physical injuries suffered by her son.

**Opportunity for Amendment**

Plaintiffs include in their response brief an informal request to further amend their pleading if it is found to be deficient. They do not propose any particular amendment, however, and have not complied with the requirement of LCvR15.1 to provide a proposed pleading as an exhibit. Further, prior opportunities to amend have failed to yield a sufficient pleading, and the deadline set by the Scheduling Order expired long ago. Under these circumstances, the Court finds that Plaintiffs have failed to show "justice so requires" leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *see also Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (requiring written motion for leave to amend); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (refusing leave to amend may be warranted due to undue delay, failure to cure deficiencies by amendments previously allowed, or futility of amendment).

## Conclusion

The Second Amended Complaint relates an unfortunate series of events resulting in a debilitating injury to Mr. Autry that might have been avoided. However, for the reasons set forth above, the Court finds that the Second Amended Complaint fails to state a plausible § 1983 claim against Sheriff Lester in his official capacity by Plaintiff Robert Allen Autry or Plaintiff Sandra Valentine.

IT IS THEREFORE ORDERED that Defendant Sheriff Lester's Motion to Dismiss [Doc. No. 52] is GRANTED.

IT IS SO ORDERED this 15th day of September, 2017.

TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE