IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ROBERT ALLEN AUTRY, an )
Incapacitated Person individually, *et al.*, )
)
Plaintiffs, )
)
vs. )    Case No. CIV-15-1167-D
)
CLEVELAND COUNTY SHERIFF'S )
DEPARTMENT, *et al.*, )
)
Defendants. )

# O R D E R

Before the Court are the Motions to Dismiss of Defendants Turn Key Health Clinics,

ESW Correctional Healthcare, LLC, Cindy Bilyeu, Raven Funez, and Deloris Brown [Doc.

No. 67] and of Defendant Deanna Wheeler [Doc. No. 83], filed pursuant Fed. R. Civ.

P. 12(b)(6).[1]  The moving defendants are a private contractor and its employees who

provided medical care to inmates at the Cleveland County Detention Center ("CCDC").[2]

---

[1]  Defendant Wheeler also moves for dismissal pursuant to Rule 12(b)(3) (improper venue) and 28 U.S.C. § 1915 and § 1915A (regarding *in forma pauperis* and prisoner cases).  *See* Def. Wheeler's Mot. [Doc. No. 83] at 1.  These citations are not explained in the supporting briefs and have no apparent application.  Defendant Wheeler also cites Rule 12(b)(1), but subject matter jurisdiction clearly exists for a civil rights action under 42 U.S.C. § 1983.  She instead appears to challenge the Court's exercise of supplemental jurisdiction over any state law tort claim.

[2]  The Second Amended Complaint names two business entities as medical contractors, but Defendants contend there is only one entity:  "Turn Key Health Clinics, LLC d/b/a ESW Correctional Healthcare."  *See* Defs.' Mot. Dismiss [Doc. No. 67], cover page, n.1.  Plaintiffs do not dispute this contention and propose to cure any misidentification by amendment.  *See* Pl.'s Resp. Br. [Doc. No. 93] at 12.  For brevity, the Court refers to this defendant hereafter as "Turn Key," which is the short form used by Plaintiffs in their pleading to refer to Turn Key Health Clinic, LLC.  *See* Second Am. Compl. [Doc. No. 49], ¶ 59.

The Second Amended Complaint groups these defendants together – referring to them collectively as "contract medical providers" – and asserts identical claims against them. Because their Motions assert common grounds for dismissal, they are taken up together.

Plaintiffs Robert Allen Autry (alleged to be an incapacitated person) and Sandra Valentine (his mother and guardian) have filed responses [Doc. Nos. 93 & 96] in opposition to the Motions, and the movants have replied [Doc. Nos. 99 & 102]. The Motions are fully briefed and ripe for decision.

## Factual and Procedural Background

Plaintiffs bring claims under 42 U.S.C. § 1983 and state law for damages allegedly caused by a failure to provide medical care to Mr. Autry while he was a pretrial detainee at CCDC. The case was filed in October 2015, but the movants were first added as defendants by the Second Amended Complaint filed January 4, 2017. The first movants were served in April 2017 and filed their motion on May 2, 2017; they refer to themselves collectively as the "Turn Key Defendants." Defendant Wheeler was served later, appears through separate counsel, and filed her motion on June 1, 2017. Each of the individual movants is alleged to be "a nurse employee who provided healthcare to detainees at the CCDC." *See* Second. Am. Compl. [Doc. No. 49], ¶¶ 14-17.

Defendants Cleveland County Sheriff's Department, Joseph K. Lester in his official capacity as Sheriff of Cleveland County, the Board of County Commissioners of Cleveland County, and other "John Doe" defendants have previously been dismissed, by either

Plaintiffs [Doc. Nos. 31 & 54] or the Court [Doc. Nos. 33, 65, 82 & 105].[3]    Plaintiffs have also sued Norman Regional Health Authority and Marshall L. Rea, D.O. based on the emergency medical treatment provided to Mr. Autry at Norman Regional Hospital ("NRH"); these defendants have also filed motions to dismiss, which are addressed by a separate order.

### Plaintiffs' Allegations

As pertinent to the Motions, Plaintiffs allege that Mr. Autry suffered accidental head trauma as a teenager that "left him with injuries to his skull which made sinus infections especially dangerous" because "his injuries allowed for an untreated sinus infection to cause brain infection."    *See* Second Am. Compl. ¶ 21.    While detained at CCDC in November 2014, Mr. Autry developed a sinus infection.    He first told his mother, Sandra Valentine, about it on November 13, 2014.    The next day, Ms. Valentine informed a receptionist at CCDC that Mr. Autry had symptoms of a sinus infection and that "he needed immediate medical attention due to his traumatic brain injury ('TBI')."    *Id*. ¶ 23.    Ms. Valentine was given a telephone number to contact CCDC's medical staff, and she "called the number repeatedly and left multiple messages for the Jail's medical staff regarding Autry's TBI history, her concerns about his untreated sinus infection, and the dangers of an untreated sinus infection in his situation."    *Id*. ¶ 24.

---

[3]    Originally, Plaintiffs also sued the Oklahoma Indigent Defense System, EMSA and Cleveland County, but dismissed those defendants at an early stage.    *See* Stipulations [Doc. Nos. 24-26 & 28].

On November 20, 2014, Mr. Autry told his mother that CCDC's medical staff had given him only nonprescription medications to relieve pain and to reduce fever and inflammation (ibuprofen and naproxen). Ms. Valentine told the medical staff the same day that Mr. Autry needed additional medical care and medication. On November 21, 2014, Mr. Autry spoke to "Jail staff" about his condition and "requested medical attention and antibiotics" but received none. *Id.* ¶ 27. On November 25, 2014, Mr. Autry was seen by CCDC's medical staff and personally "informed them of his condition and his previous TBI," but he received no additional treatment and was returned to his cell. *Id.* ¶ 28. On November 26 or November 29, 2014 (*id.* ¶¶ 29, 68, 75), Mr. Autry was transported to the emergency room of NRH for evaluation and was examined by Dr. Rea. However, Mr. Autry was returned to the jail "without receiving any antibiotics" (¶ 29) and without instructions for treatment of the infection (¶ 68).

On December 1, 2014, Ms. Valentine received a call asking her to provide written consent for Mr. Autry to receive emergency surgery; he "had been found unconscious in his cell and had been transported back to NRH." *Id.* ¶¶ 30-31, 69. Later the same day, Mr. Autry underwent emergency brain surgery at NRH; he was diagnosed with "a serious bacterial infection in his brain as a result of an untreated sinus infection." *Id.* ¶ 33. The surgery involved a craniectomy to open his skull and allow drainage, and the placement of a shunt to reduce intracranial pressure. A second emergency surgery was performed at NRH on December 5, 2014, to enlarge the skull opening and permit surgical drainage. Then beginning December 12, 2014, Mr. Autry underwent a series of operations and procedures to place a feeding tube, insert a tracheal tube, and replace a cranial monitoring

probe. On January 14, 2015, the treating physician determined Mr. Autry "was totally incapacitated from a brain injury resulting from a brain abscess and subdural empyema" and "would likely never return to an independent state." *Id.* ¶ 40.

Plaintiffs assert in Count 3 of the Second Amended Complaint that Turn Key and Defendants Bilyeu, Funez, Brown, and Wheeler were "contract medical providers to Autry while he was in the care and custody of the Sheriff of Cleveland County" and were acting under color of state law with a constitutional duty to provide adequate medical treatment. *Id.* ¶¶ 59, 61. Plaintiffs state that Turn Key and, upon information and belief, all of the nurses employed by Turn Key (Bilyeu, Funez, Brown, and Wheeler) delivered medical care to Mr. Autry at CCDC, and that these "contract medical providers, despite being on notice of Autry's potentially life-threatening condition, ignored the risks by ignoring his requests for additional medical treatment." *Id.* ¶¶ 61, 70. Plaintiffs allege that "[t]he contract medical providers delayed the initiation of proper care" and "delayed in approving a transfer to the NRH emergency room or any other hospital." *Id.* ¶¶ 70-71.

Plaintiffs claim the contract medical providers' failure to provide care "constituted deliberate indifference to the health and well-being of Autry." *See id.* ¶¶ 72, 73. Plaintiffs allege "[t]he end result of the deliberate indifference was an unnecessary, unreasonable . . . life-changing injury that resulted in permanent harm to Autry." *Id.* ¶ 73. Further, Plaintiffs claim that the delay and denial of adequate medical care to Mr. Autry was the result of "[a] lack of proper training, a lack of proper supervision by Dr. John Doe [Turn Key's doctor], [and] a failure to propagate proper policies and procedures, which includes the failure to properly communicate the serious risk faced by Autry with improper

treatment." *Id*. For relief, Plaintiffs seek to recover "actual damages allowed by law," punitive damages, and attorney fees. *Id*. ¶¶ 73, 99.

## Defendants' Motions

All movants first seek the dismissal of Count 3 as time barred by the statute of limitations applicable to a § 1983 claim.[4] Second, the movants challenge the sufficiency of Plaintiffs' factual allegations to state a § 1983 claim against any particular defendant. They argue that the Second Amended Complaint fails to show any one of them acted with deliberate indifference to a serious medical need of Mr. Autry while he was confined at CCDC. Finally, Turn Key asserts that it cannot be held liable under § 1983 based on a *respondeat superior* theory of vicarious liability for its employees' acts but, instead, Plaintiffs' § 1983 claim against Turn Key must be based on a municipal liability theory, which requires the existence of an official policy or custom that caused the alleged injury.[5] Turn Key argues that the Second Amended Complaint contains insufficient factual allegations to support such liability.

---

[4] Turn Key and its co-movants also challenge the timeliness of service of process and request dismissal under Rule 4(m). However, Plaintiff joined these defendants on January 4, 2017, and completed service of process on them by April 12, 2017. *See* Pls.' Resp. [Doc. No. 64] at 3, ¶ 8. Based on Plaintiffs' response to a show cause order [Doc. No. 61], the Court expressly found that Plaintiffs had "shown good cause for untimely service of the defendants who were added by the Second Amended Complaint and served outside the 90-day time limit of Fed. R. Civ. P. 4(m)." *See* 4/25/17 Order [Doc. No. 65] at 1. The Court also ruled that "the untimely service of all defendants who were served by April 12, 2017, should be excused." *Id*. at 2. The Court finds no sufficient reason to revisit that ruling.

[5] *See Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) ("Municipalities can be liable under 42 U.S.C. § 1983 only for their own unlawful acts. Accordingly, to prove a § 1983 claim against a municipality, a plaintiff must show the existence of a municipal policy or custom which directly caused the alleged injury.") (citation omitted).

Regarding any state law tort claim, Turn Key and its co-movants assert a time-bar defense based on Okla. Stat. tit. 12, § 95(A)(1), which provides a one-year limitation period for a claim based on conduct arising out of an inmate's detention. Alternatively, these defendants contend the Second Amended Complaint fails to state a common law tort claim against them. They also assert sovereign immunity from suit under the provisions of Oklahoma's Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151-72.[6]

Finally, Defendant Wheeler asserts that a negligence claim against a licensed medical professional, including a nurse, requires the affidavit of a qualified expert. *See* Okla. Stat. tit. 12, § 19.1. She contends the expert report provided by Plaintiffs as an attachment to the Second Amended Complaint is insufficient to satisfy this requirement. This contention has been overcome by subsequent legal developments. On October 24, 2017, the Oklahoma Supreme Court determined that "[S]ection 19.1 is an impermissible barrier to court access and an unconstitutional special law." *John v. St. Francis Hosp., Inc.*, 405 P.3d 681, 683 (Okla. 2017). The supreme court announced: "Section 19.1 is stricken" from Title 12 of the Oklahoma Statutes. *Id.* Thus, the affidavit requirement is no longer enforceable, and the dismissal requested by Defendant Wheeler on this basis would be improper.

---

[6] The Motion of Turn Key and its employees raises an additional issue of whether punitive damages are recoverable. However, a Rule 12(b)(6) motion tests the sufficiency of a claim; it is not a proper vehicle for challenging the propriety of punitive damages. "'[T]he prayer for relief is no part of the cause of action and . . . the parties are entitled to such relief and to such judgment as the complaint . . . makes out.'" *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 901 (10th Cir. 2011) (quoting *Daniels v. Thomas*, 225 F.2d 795, 797 & n.5 (10th Cir. 1955)). Thus, the Court does not address the issue of available damages in ruling on a Rule 12(b)(6) motion.

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id*. at 679; *see also Robbins*, 519 F.3d at 1248. "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." *See Robbins*, 519 F.3d at 1249-50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009). "[I]t is incumbent upon a plaintiff to 'identify specific actions

taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)) (emphasis added by the court in *Pahls*).

"'[I]f the allegations [of a complaint] show that relief is barred by the applicable statutes of limitations, the complaint is subject to dismissal for failure to state a claim.'" *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096-97 (10th Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). A party seeking to toll a limitations period bears "the burden of [pleading and] proving justifiable circumstances." *Olson v. Fed. Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004) (citing *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1044 n.4 (10th Cir. 1980)); *see Heil v. Wells Fargo Bank*, 298 F. App'x 703, 707 (10th Cir. 2008) (unpublished).[7]

## Discussion

### A.    Timeliness of § 1983 Action

The movants assert that Plaintiffs' § 1983 claims against them became time barred on December 1, 2016, before the Second Amended Complaint was filed. The statute of limitations for Plaintiffs' § 1983 action is borrowed from state law, and is the two-year period of Okla. Stat. tit. 12, § 95(A)(3). *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Meade v. Grubbs*, 841 F.2d 1512, 1523-24 (10th Cir. 1988). Federal law governs the accrual of a § 1983 claim. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Alexander v.*

---

[7] Unpublished opinions are cited in this Order pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

*Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004).[8]  But "state law governs the application of tolling in a [§ 1983] action."  *Alexander*, 382 F.3d at 1217 (footnote omitted); *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) ("For section 1983 actions, state law determines the appropriate statute of limitations and accompanying tolling provisions."); *see also Hardin v. Straub*, 490 U.S. 536, 539, 544 (1989) (federal courts apply state tolling rules in § 1983 cases unless doing so would defeat federal policy goals; a Michigan tolling statute for inmates' lawsuits was "consistent with § 1983's remedial purpose").

Plaintiffs primarily argue that their § 1983 claims are timely based on an equitable tolling doctrine or a tolling statute, Okla. Stat. tit. 12, § 96, due to Mr. Autry's incapacity.[9] The Tenth Circuit has summarized Oklahoma law regarding these issues as follows:

> In general, Oklahoma permits the tolling of a statute of limitations in two circumstances.  First, the existence of a "legal disability" provides proper grounds for equitable tolling.  *See* Okla. Stat. tit. 12, § 96 (West 2000).  Although the exact definition of this term remains unclear, Oklahoma courts have applied this provision only for plaintiffs whose competency is impaired or who have not reached the age of majority.  *See, e.g.*, *Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla.1992) (finding that those who could conduct their own business affairs over time are sufficiently competent to render them ineligible for "legal disability" tolling); Okla. Stat.

---

[8] "In general, under the federal discovery rule, claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.  In particular, a civil rights action accrues when facts that would support a cause of action are or should be apparent."  *Alexander*, 382 F.3d at 1215 (internal quotations and citations omitted).  "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated."  *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal quotation and citation omitted).

[9] Plaintiffs also argue that the accrual of their claims was delayed by operation of a state law discovery rule.  However, as stated *infra*, federal law governs the accrual issue.  It seems Plaintiffs would have known that a constitutional violation occurred as soon as Mr. Autry suffered debilitating injuries as an alleged result of deliberate indifference to his medical needs.  Plaintiffs do not allege any facts in their Second Amended Complaint to show otherwise.

tit. 12, § 96 (citing incompetence and failure to attain the age of majority as grounds for meriting legal disability tolling).

> Second, . . . if defendants engage in "false, fraudulent or misleading conduct" calculated to lull plaintiffs into sitting on their rights, the limitations period may not be triggered. *Jarvis v. City of Stillwater*, 732 P.2d 470, 473 (Okla. 1987); *see also Hurt v. Garrison*, 192 Okla. 66, 133 P.2d 547, 550 (1942) (holding a statute of limitations tolled during a period of fraudulent concealment). . . .

*Alexander*, 382 F.3d at 1217.[10]   Only the first tolling rule is implicated here; Plaintiffs do not allege the movants engaged in any fraudulent or misleading conduct designed to lull them into inaction.

The Oklahoma tolling statute provides in pertinent part as follows:

> If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one (1) year after such disability shall be removed . . . .

Okla. Stat. tit. 12, § 96.   This provision has been interpreted broadly according to its terms: A legally disabled person's "legal claims are preserved until one year after his disability is removed.   The few exceptions to this rule are stated explicitly in the statute itself." *Freeman v. Alex Brown & Sons, Inc.*, 73 F.3d 279, 281 (10th Cir. 1996) (footnote omitted).[11]   The rule applies "regardless of whether [the legally disabled person] is

---

[10]   The court also opined in *Alexander* that extraordinary circumstances might justify tolling under federal law.   *See Alexander*, 382 F.3d at 1219.   However, no such circumstances are alleged in this case.

[11]   One exception is a separate set of deadlines for medical malpractice actions (*id*. at 281 n.2), which is discussed in Plaintiffs' briefs.   By its terms, this exception applies only to a medical malpractice claim, not a civil rights or other personal injury action.   Further, an Oklahoma appellate court has ruled this exception is invalid as an unconstitutional special law.   *See Mowles ex rel. Mowles v. Hillcrest Med. Ctr.*, 832 P.2d 24, 26 (Okla. Civ. App. 1991).

represented by a guardian who might otherwise bring the action within the normal limitation period." *Freeman*, 73 F.3d at 281. Also, "§ 96 does more than merely delay the running of the relevant statute of limitation for a specific period of time. It indefinitely suspends the statute of limitation and preserves the legally-disabled person's claim . . . ." *Id*. Legally-disabled persons include minors and incompetent adults; in *Freeman*, the person had "suffered debilitating physical injuries in a workplace accident" that "rendered him unable to communicate with others, comprehend his surroundings, or make decisions on his own behalf" and his mother was appointed as his guardian. *Id*. at 280.

In this case, the movants argue that Plaintiffs have failed to allege sufficient facts to support tolling under Oklahoma law based on a legal disability of Mr. Autry.[12] The Court is not persuaded by Defendants' arguments, which overlook Plaintiffs' allegations that Mr. Autry "was found unconscious in his cell" and "returned to the hospital in a coma" on December 1, 2014, and that the injuries he suffered as result of the untreated infection rendered him "totally incapacitated from a brain injury." *See* Second Am. Compl. ¶¶ 31, 40, 69 and 82. Plaintiffs' expert describes Mr. Autry's condition as a "vegetative state." *Id*. attach. 1 [Doc. No. 49-1].[13] Ms. Valentine brings this action as "Guardian for Ward Robert Allen Autry." *See* Second Am. Comp. [Doc. No. 49] p.2 (introductory paragraph)

---

[12] Turn Key and its co-movants also mistakenly argue that § 96 is a special statute of limitations that should not apply as a matter of federal law.

[13] Documents attached to a complaint can properly be considered under Rule 12(b)(6). *See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc*., 680 F.3d 1194, 1201 (10th Cir. 2011); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

and ¶ 96.  The Court finds these allegations to be sufficient to state a potential basis for tolling the limitations period for Mr. Autry's § 1983 claim, subject to later proof.

Defendants point out that Mr. Autry's legal disability would not toll the limitations period for Ms. Valentine's § 1983 claim.  *See* Def. Wheeler's Reply Br. [Doc. No. 99] at 2.  While the exact nature of Ms. Valentine's claim is unclear, it is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."  *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).  Earlier in this case, Sheriff Lester challenged Ms. Valentine's § 1983 claim under Rule 12(b)(6), and she identified her claim as one of "substantive due process . . . based on the violation of her right to familial companionship and society."  *See* Pls.' Resp. Def. Lester's Mot. Dismiss [Doc. No. 62] at 9.  The Court found "in Plaintiffs' argument and the alleged facts of the Second Amended Complaint, no basis to support a substantive due process claim of Ms. Valentine based on physical injuries suffered by her son," and dismissed the claim.  *See* 9/15/17 Order [Doc. No. 105] at 12.  Regardless of the correctness of this merits ruling, any § 1983 claim asserted by Ms. Valentine must be her own, and a legal disability of her son would not toll the running of the statute of limitations applicable to her claim.[14]

---

[14]  An Oklahoma appellate court has held that § 96 does not preserve a parent or guardian's individual claim to recover medical expenses incurred on behalf of an injured child.  *See Brown v. Jimerson*, 862 P.2d 91, 93 (Okla. Civ. App. 1993).  Although not binding, this intermediate court decision is "some evidence of how the state supreme court would decide the issue," and provides persuasive authority.  *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

Any claim based on Ms. Valentine's loss of familial association with her son accrued, at the latest, when he suffered a life-threatening brain injury requiring surgical treatment and intervention to provide nutrition and breathing assistance, which occurred December 12-13, 2014.[15]  Ms. Valentine articulates no theory of tolling that would save her claim from the two-year time bar that expired in December 2016, before her action against the moving defendants was filed by joining them in the Second Amended Complaint on January 4, 2017.  Therefore, the Court finds that Ms. Valentine's § 1983 claim is time barred, and must be dismissed.[16]

## B.    Individual Nurses' § 1983 Liability

Mr. Autry's § 1983 claim is based on an alleged violation of his right as a pretrial detainee to constitutionally adequate medical treatment.  The constitutional standard prohibits deliberate indifference to an inmate's serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[17]  A § 1983 claim of deliberate indifference to a serious

---

[15]   The claim might be based on allegations that Ms. Valentine was not allowed to visit her son in the hospital until she got a court order on December 3, 2014.  *See* Second Am. Comp. ¶¶ 32, 35.  If so, the claim accrued on that date.

[16]   Plaintiffs make a cursory argument that the relation-back doctrine of Fed. R. Civ. P. 15(c)(1)(C) should apply and render their action filed on the date of the original Complaint. *See* Pls.' Resp. Turn Key Defs.' Mot. [Doc. No. 93] at 7-8; *See* Pls.' Resp. Wheeler's Mot. [Doc. No. 96] at 6-7.  By its terms, however, Rule 15(c)(1)(C) does not apply; it requires an amended pleading that "changes the party or the naming of the party against whom a claim is asserted" and the satisfaction of certain conditions.  The moving defendants were not named in the Complaint unless a "Unknown John/Jane Doe Jail Personnel" designation applies to them. *See* Compl. [Doc. No. 1], ¶ 11.  The Tenth Circuit has held that Rule 15(c)(1)(C), formerly Rule 15(c)(3), does not apply to a "John Doe" defendant.  *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).

[17]  A pretrial detainee's right to medical care arises from the Due Process Clause of the Fourteenth Amendment, but the deliberate indifference standard of the Eighth Amendment applies. *See Rife v. Okla. Dep.'t of Pub. Safety*, 854 F.3d 637, 647 (10th Cir.), *cert. denied sub nom.*, 138

medical need has both objective and subjective components.  *See Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective component requires a plaintiff to show the existence of a medical need that was "sufficiently serious."  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Al-Turki*, 762 F.3d at 1192-93; *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The subjective component requires a showing that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  This means a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*.  To satisfy the subjective component "requires the prison official to disregard the risk of harm claimed by the prisoner."  *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009).

Where a medical professional is involved, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment," such as deciding "whether to consult a specialist or undertake additional medical testing."  *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).  The standard is satisfied "where the need for additional treatment or referral to a medical specialist is obvious" but ignored, such as where "a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral" or "a medical professional completely denies care although presented with recognizable

S. Ct. 364 (2017); *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

symptoms which potentially create a medical emergency." *Id.* "A prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211); *accord Self*, 439 F.3d at 1232.

In this case, the individual movants challenge the sufficiency of Plaintiffs' allegations to satisfy the subjective component of the deliberate indifference standard; they do not question that Mr. Autry's medical need was sufficiently serious.[18]  The claimed risk of harm arises from Mr. Autry's pre-existing condition (which apparently was not visible but was disclosed in medical records and history), combined with a sinus infection that developed or became manifest while Mr. Autry was detained at CCDC.  The nurses assert, correctly, that Plaintiffs' allegations show Mr. Autry received medical care through the administration of medications to treat his symptoms; they argue he simply did not receive the care that was requested, or perhaps required.  They contend these allegations amount to mere negligence, if anything, and not deliberate indifference.

Upon consideration of the facts alleged in the Second Amended Complaint, the Court finds sufficient allegations, although barely, to demonstrate deliberate indifference to Mr. Autry's medical need by the nurses who allegedly provided his care at CCDC. Drawing all reasonable inferences in Plaintiffs' favor, the nurses employed by Turn Key at

---

[18]  The court of appeals has explained:  "Where a prisoner claims that harm was caused by a delay in medical treatment, he must 'show that the delay resulted in substantial harm' in order to satisfy the objective prong of the deliberate indifference test."  *Al-Turki*, 762 F.3d at 1193 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

CCDC – Defendants Bilyeu, Funez, Brown, and Wheeler – provided medical treatment to Mr. Autry during the period of his confinement in CCDC with a sinus infection. They were informed by Mr. Autry personally and by his mother's telephone messages of the particular risk he faced, and Ms. Valentine offered to provide medical records. By communicating with CCDC's medical providers in this manner, Ms. Valentine was following jail procedures as instructed by the persons with whom she spoke. Thus, it is reasonable to assume the messages were received. Nevertheless, one could infer from the allegations of the Second Amended Complaint that Mr. Autry was not assessed by anyone other than a nurse until he was first transported to the emergency room at NRH on November 29, 2014 (viewing the allegations most favorably to him). A reasonable fact finder could conclude that the nurses ignored Mr. Autry's need for diagnosis and treatment by a medical professional capable of addressing his medical condition, and so declined or unreasonably delayed to perform their gatekeeper role.

The Court acknowledges that the nurses challenge the sufficiency of Plaintiffs' allegations to show that any of them was involved in the alleged denial or delay of medical treatment for Mr. Autry's sinus infection.[19] The Court recognizes that "[i]ndividual liability under § 1983 must be based on the defendant's personal involvement in the alleged

---

[19] Curiously, Plaintiffs respond to this argument (and others) by referring to a "proposed Third Amended Complaint." *See*, *e.g.*, Pls.' Resp. Turn Key Defs.' Mot. [Doc. No. 93] at 13; Pls.' Resp. Def. Wheeler's Mot. [Doc. No. 96] at 10. Plaintiffs say that, among other things, the amendment will identify "the contract medical providers individually and specifically in each paragraph where the group name had previously been utilized for the purpose of achieving a 'short and plain' pleading." *Id*. However, Plaintiffs have not made a motion or other request to further amend their pleading and, to date, have not filed any proposed amendment.

constitutional violation." *Schneider v. City of Grand Junction Police Dep.'t*, 717 F.3d 760, 768 (10th Cir. 2013) (internal quotation omitted). While Plaintiffs' allegations against the nurses collectively as "contract medical providers" presents a close question, the Court finds that the participation of all Turn Key's nurse employees in deliberately indifferent conduct could reasonably be inferred from the facts that Mr. Autry had multiple contacts with medical providers at CCDC and his condition allegedly went untreated for more than two weeks.

For these reasons, the Court finds that the Second Amended Complaint states a plausible § 1983 claim against each of Defendants Bilyeu, Funez, Brown, and Wheeler.

## C.    Turn Key's § 1983 Liability

Tenth Circuit law holds that "a private actor [acting under color of state law] 'cannot be held liable *solely* because it employs a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (quoting *Monell v. N.Y. City Dep.'t Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, "the *Monell* doctrine [extends] to private § 1983 defendants" acting under color of state law. *Id.* The court of appeals has summarized the doctrine as follows:

> [A] plaintiff must show the existence of [an official] policy or custom which directly caused the alleged injury. A policy or custom includes a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees.

*Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citation omitted). "[T]he longstanding interpretation of § 1983's standards for imposing municipal liability" requires that "a plaintiff must identify a . . . policy or custom that caused the injury" and "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769 (internal quotations omitted) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). For causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Id.* at 770 (internal quotation omitted). Dismissal of a § 1983 claim against a private party that is otherwise subject to suit under the statute is appropriate where the plaintiff "has failed to identify any custom or practice of [the party] that has a direct causal link to the alleged constitutional violations." *See Sherman v. Klenke*, 653 F. App'x 580, 592-93 (10th Cir. 2016) (unpublished opinion) (affirming dismissal of § 1983 action against contractor that provided inmate medical services).

Upon examination of the Second Amended Complaint, the Court finds only conclusory allegations that an inadequate policy of Turn Key regarding medical care of CCDC inmates existed. Plaintiffs fail to identify a particular policy or practice of Turn Key that was deficient, or to suggest that any such deficiency caused Mr. Autry to be denied or receive delayed medical treatment, except a vague allegation that there was a lack of "proper policies and procedures" to communicate serious medical risks of inmates such as Mr. Autry. *See* Second Am. Compl. ¶ 73. From these bare allegations, no deficient Turn Key policy or custom can be discerned, and no causal connection between a policy

and Mr. Autry's injury is apparent.   Even in their brief, Plaintiffs do not identify a medical care policy at stake, but propose to add "affirmative allegations that the policies and procedures of [Turn Key] caused injury to Mr. Autry" in a "proposed Third Amended Complaint" that has never materialized.   *See* Pls.' Resp. Br. Turn Key Defs.' Mot. [Doc. No. 93] at 15; *see supra* note 19.   Therefore, the Court finds that the Second Amended Complaint fails to state a plausible § 1983 claim against Turn Key based on a denial of medical care to Mr. Autry.

**D.     Supplemental State Law Claims**

The movants first assert that the Second Amended Complaint fails to state any negligence claim against them.   This assertion is based on a narrow reading of Plaintiffs' pleading.   Count 5, which bears the heading "State Law Violation," alleges only that the individual defendants who are physicians, Drs. Doe and Rea, "failed to provide reasonable and standard medical care and services to Autry" and failed "to meet the standard of care reasonably required in the profess[ion]."   *See* Second Am. Compl. ¶¶ 87-88.   However, Count 5 also incorporates by reference previous paragraphs of the Second Amended Complaint, and Plaintiffs allege in Count 5 that the "negligence of the defendants, and each of them" caused past and future medical expenses.   *Id*. ¶ 90.   As discussed above, Plaintiffs' factual allegations regarding the failure to provide adequate medical care to Mr. Autry at CCDC could be viewed as claiming negligence, as a lesser degree of misconduct than deliberate indifference to a serious medical need.   Thus, the Court finds that the Second Amended Complaint plausibly states common law negligence claims against the movants.

### 1. Timeliness of Negligence Action

The movants disagree regarding the proper statute of limitations for Plaintiffs' negligence claims. Turn Key and its co-movants rely on the one-year limitation period of Okla. Stat. tit. 12, § 95(A)(11) for "actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate." Defendant Wheeler argues that the two-year limitation period of Okla. Stat. tit. 76, § 18, for medical malpractice actions applies. Without addressing who is correct, Plaintiffs again rely on the tolling provision of Okla. Stat. tit. 12, § 96, for legally disabled persons. For the same reasons stated *infra* regarding Mr. Autry's § 1983 claim, the Court finds that a basis for tolling the limitations period based on a legal disability is sufficiently alleged in the Second Amended Complaint.[20] Further, to the extent Defendant Wheeler is correct, the statute expressly provides that "minority or incompetency when the cause of action arises will extend said period of limitation." Okla. Stat. tit. 76, § 18.

Regarding any negligence claim asserted by Ms. Valentine individually, the Court finds for the same reasons stated *supra* regarding her § 1983 claim that a legal disability of Mr. Autry does not provide a basis for tolling the limitations period for her claim. The

---

[20] The Court recognizes that Section 96 contains separate rules for medical malpractice actions. *See supra* note 11. The Oklahoma Court of Civil Appeals has determined these rules are invalid as a special law prohibited by the Oklahoma Constitution. *See Mowles ex rel. Mowles v. Hillcrest Med. Ctr.*, 832 P.2d 24, 26 (Okla. Civ. App. 1991). The Court finds this decision to be persuasive authority, particularly in light of the Oklahoma Supreme Court's repeated rejection of legislative attempts to create other special rules, including special limitations rules, for medical malpractice actions. *See Reynolds v. Porter*, 760 P.3d 816, 821 (Okla. 1988); *see also Zeier v. Zimmer, Inc*, 152 P.3d 861, 868 n.36 (Okla. 2006) (citing *Mowles* with approval).

Court therefore finds that any negligence claim asserted by Ms. Valentine against the moving defendants is time barred and must be dismissed.

### 2. Immunity

Turn Key and its employees assert in their Motion that the GTCA provides them with sovereign immunity from suit. Specifically, they rely on a statutory provision that defines state "employees" to include "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." *See* Okla. Stat. tit. 51, § 152(7)(b)(7). The movants identify no basis in the Second Amended Complaint, however, from which to conclude that Turn Key was a licensed medical professional or that the nurses employed by Turn Key (assuming they were licensed) had contracts with Cleveland County to provide medical care to CCDC inmates. In short, the factual allegations of the Second Amended Complaint provide insufficient information from which to conclude that Turn Key or its employees fit the statutory definition of "employees" protected by the GTCA.

### Opportunity for Amendment

Plaintiffs have made no motion, or even an informal request, to further amend their pleading if it is found to be deficient. Further, prior opportunities for amendment have failed to yield a fully sufficient pleading, and the deadline set by the Scheduling Order expired long ago. Under these circumstances, the Court finds that Plaintiffs have failed to show "justice so requires" leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

**Conclusion**

For the reasons set forth above, the Court finds that the Second Amended Complaint fails to state any claim by Plaintiff Sandra Valentine individually on which relief can be granted, and fails to state a § 1983 claim against Defendant Turn Key Health Clinics, LLC or ESW Correctional Healthcare. However, the Second Amended Complaint states a plausible § 1983 claim by Plaintiff Robert Autry against Defendants Bilyeu, Funez, Brown, and Wheeler, as well as a plausible state law negligence claim by Plaintiff Robert Autry against all moving defendants.

IT IS THEREFORE ORDERED that Defendants Turn Key Health Clinics, ESW Correctional Healthcare LLC, Cindy Bilyeu, Raven Funez, and Deloris Brown's Motion to Dismiss [Doc. No. 67] and Defendant Deanna Wheeler's Motion to Dismiss [Doc. No. 83] are GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 5th day of February, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE