IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT ALLEN AUTRY, an Incapacitated Person individually, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CIV-15-1167-D |
| CLEVELAND COUNTY SHERIFF'S DEPARTMENT, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

# **O R D E R**

Before the Court are Defendant Norman Regional Hospital Authority's Motion to Dismiss Second Amended Complaint [Doc. No. 69] and Defendant Marshall L. Rea, D.O.'s Motion to Dismiss [Doc. No. 79], both filed pursuant Fed. R. Civ. P. 12(b)(6). Plaintiffs assert claims against these defendants under 42 U.S.C. § 1983 and the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and state law. Plaintiffs Robert Allen Autry (alleged to be an incapacitated person) and Sandra Valentine (his mother and guardian) have filed responses [Doc. Nos. 94 & 95], and the movants have replied [Doc. Nos. 97 & 100]. The Motions are fully briefed and ripe for decision.

Defendant Norman Regional Health Authority d/b/a Norman Regional Hospital ("NRH") seeks a dismissal of all claims against it in the Second Amended Complaint.[1]

---

[1] NRH states it is improperly identified in Plaintiffs' pleading, and has filed the Motion in its proper name.

As to the federal claims, NRH asserts that Plaintiffs' claims are time barred and their pleading otherwise fails to state a claim for relief. NRH contends any state law tort claim is governed by Oklahoma's Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151-72, and is barred by Plaintiffs' failure to satisfy statutory preconditions to suit. Alternatively, if Plaintiffs' federal claims are dismissed, NRH urges the Court to decline supplemental jurisdiction of any state law claim.

Defendant Marshall L. Rea, D.O. ("Dr. Rea") also seeks the dismissal of all claims. He denies being a proper defendant under either federal statute because, as to § 1983, Plaintiffs allege no facts to show he was acting under color of state law or acted unconstitutionally while practicing emergency medicine at NRH, and, as to EMTALA, only hospitals can be sued. *See* 42 U.S.C. § 1395dd(d)(2)(A). Absent any federal claim against him, Dr. Rea asks the Court to decline supplemental jurisdiction of Plaintiffs' negligence claims.

## Factual and Procedural Background

Plaintiffs bring claims against NRH and Dr. Rea under federal and state laws to recover damages allegedly caused by inadequate emergency medical care provided to Mr. Autry on November 29, 2014. At the time, Mr. Autry was a pretrial detainee at the Cleveland County Detention Center ("CCDC"). This case was filed in October 2015, but NRH and Dr. Rea were first added as defendants by the Second Amended Complaint [Doc. No. 49] filed January 4, 2017. The Court authorized Plaintiffs to exceed the 90-day time limit for service of process, and Plaintiffs timely served NRH and Dr. Rea on April 11, 2017, and May 10, 2017, respectively. *See* 4/27/17 Order [Doc. No. 65].

Plaintiffs assert claims against other defendants in the Second Amended Complaint related to Mr. Autry's detention at CCDC and the medical care he received there. Some of these defendants – Cleveland County Sheriff's Department, the Oklahoma Indigent Defense System, EMSA, Cleveland County, Joseph K. Lester in his official capacity as Sheriff of Cleveland County, the Board of County Commissioners of Cleveland County, and multiple "John Doe" defendants – have previously been dismissed, by either Plaintiffs [Doc. Nos. 24-26, 28, 31 & 54] or the Court [Doc. Nos. 33, 65, 82 & 105]. Some claims against other defendants remain pending. *See* 2/5/18 Order [Doc. No. 106]. Only the facts relevant to Plaintiffs' claims against NRH and Dr. Rea are stated in this Order.

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in assessing plausibility, a court should first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id*. at 679; *see also Robbins*, 519 F.3d at 1248. "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." *See Robbins*, 519 F.3d at 1249-50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009). "[I]t is incumbent upon a plaintiff to 'identify specific actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)) (emphasis added by the court in *Pahls*).

"'[I]f the allegations [of a complaint] show that relief is barred by the applicable statutes of limitations, the complaint is subject to dismissal for failure to state a claim.'" *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096-97 (10th Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). A party seeking to toll a limitations period bears "the burden of [pleading and] proving justifiable circumstances." *Olson v. Fed. Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004) (citing *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1044 n.4 (10th Cir. 1980)); *see Heil v. Wells Fargo Bank*, 298 F. App'x 703, 707 (10th Cir. 2008) (unpublished).[2]

---

[2] Unpublished opinion cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

**Plaintiffs' Allegations**[3]

Mr. Autry suffered accidental head trauma as a teenager that "left him with injuries to his skull which made sinus infections especially dangerous" because "his injuries allowed for an untreated sinus infection to cause brain infection." *See* Second Am. Compl. ¶ 21. While detained at CCDC in November 2014, Mr. Autry developed a sinus infection, and made requests for treatment to CCDC's employees and nurses employed by CCDC's contract medical care provider. In making these requests, both Mr. Autry and Ms. Valentine communicated information regarding his prior injury and the risk of harm from an untreated sinus infection, and Ms. Valentine offered to provide medical records. Mr. Autry received treatment of his symptoms with nonprescription medications to relieve pain and to reduce fever and inflammation (ibuprofen and naproxen), but the sinus infection went undiagnosed and untreated by antibiotics.

On November 29, 2014, Mr. Autry was transported to the emergency room of NRH for evaluation and treatment. He was examined by Dr. Rea, but "despite signs of infection, notice of his prior TBI [traumatic brain injury], and headache, Autry was discharged from the hospital with no further recommendation regarding the infection." *Id*. ¶ 68. Mr. Autry was "released, not to another medical facility, but back to the care and custody of the Jail without receiving any antibiotics or receiving any other stabilizing care." *Id*. ¶ 29. Plaintiffs allege as follows concerning Dr. Rea's treatment of Mr. Autry:

> Rea failed to obtain a thorough medical and surgical history of Autry, failed to perform a proper physical examination, failed to order appropriate

---

[3] Consistent with the standard of decision, Plaintiffs' factual allegations are accepted as true and stated in the light most favorable to them.

laboratory tests, failed to order x-rays of sinuses, failed to assess Autry's condition in light of the signs and symptoms and history of TBI, and had no plan of action for Autry. Rea failed to prescribe appropriate medication and/or admit Autry in the hospital for further diagnostic procedures and treatment. Further, Rea failed to stabilize Autry and failed to refer him to another medical facility, [and] instead discharged Autry back to the Jail.

*Id.* ¶ 76. Plaintiffs allege that because Mr. Autry was a pretrial detainee at the time of his examination, he "had the Constitutional right to adequate medical care and NRH and Rea had the duty to provide adequate medical care." *Id.* ¶ 77. Plaintiffs also allege that NRH, "a Public Trust," and Dr. Rea, "the physician who treated Autry at NRH" were both "acting under color of state law." *Id.* ¶ 75.

On December 1, 2014, Mr. Autry was transported back to NRH and, later the same day, underwent emergency brain surgery. *Id.* ¶¶ 30-31, 69. He was diagnosed with "a serious bacterial infection in his brain as a result of an untreated sinus infection." *Id.* ¶ 33. After additional surgeries and procedures during December 2014, which included placements of a feeding tube, a tracheal tube, and a cranial monitoring probe, the treating physician determined on January 14, 2015, that Mr. Autry "was totally incapacitated from a brain injury resulting from a brain abscess and subdural empyema" and "would likely never return to an independent state." *Id.* ¶ 40.

Plaintiffs assert in Count 4 of the Second Amended Complaint that NRH and Dr. Rea provided constitutionally inadequate medical care to Mr. Autry because "the failure and delay of appropriate care . . . is a result of deliberate indifference to his health and well-being because of his incarceration." *See id.* ¶ 85. Deliberate indifference is allegedly shown by a lack of proper treatment, "combined with the knowledge that the

doctor had all of the information at his disposal when Autry first presented himself to the hospital." *Id.* Plaintiffs allege that "[t]he end result of the deliberate indifference was an unnecessary . . . life-changing injury that resulted in permanent harm to Autry." *Id.* According to Plaintiffs: "While Autry received care at NRH, his care departed from the ordinary standard of care, and his diagnosis presents the appearance of deliberate indifference where the doctor had access to his history, ignored or neglected his symptoms, and failed to properly treat Autry with catastrophic effect." *Id.* ¶ 83.

Plaintiffs also assert in Count 4 that NRH and Dr. Rea violated EMTALA. Plaintiffs allege Mr. Aurty was entitled under EMTALA to receive "an appropriate medical screening examination to determine whether he was suffering from an emergency medical condition" and, if so, to be "stabilized [and] transferred to another medical facility" rather than released. *Id.* ¶¶ 79, 81. Plaintiffs claim Mr. Autry "was inappropriately screened by the emergency medical department of NRH . . . [and] inappropriately treated while at NRH" in that he "was given a substandard care that departed from what a 'normal [and] non-detained' paying patient would have received which caused catastrophic effects." *Id.* ¶ 83. Plaintiffs state an EMTALA violation can be inferred from the fact that "Autry was returned to the hospital in a coma . . . less than two days after his discharge." *Id.* ¶ 82.

Plaintiffs assert in Count 5 that Dr. Rea's conduct constituted medical negligence and they seek damages from "the defendants" collectively for past and future medical expenses and, apparently, for injuries and losses stated in a separate "Damages" section. *See* Second Am. Compl. ¶¶ 90, 92, 94-96.

**A.     Plaintiffs' § 1983 Action**

**1.     Timeliness**

NRH first seeks the dismissal of Plaintiffs' § 1983 action against it as time barred by the applicable two-year statute of limitations.[4]     NRH asserts that any § 1983 claim was time barred after November 29, 2016, and Plaintiffs first sued NRH by adding it as a defendant on January 4, 2017.

Plaintiffs primarily argue that their § 1983 claims are timely based on an equitable tolling doctrine or a tolling statute, Okla. Stat. tit. 12, § 96, due to Mr. Autry's incapacity. This argument is proper because "state law governs the application of tolling in a [§ 1983] action." *See Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004) (footnote omitted); *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) ("For section 1983 actions, state law determines the appropriate statute of limitations and accompanying tolling provisions."); *see also Hardin v. Straub*, 490 U.S. 536, 539, 544 (1989).[5]

---

[4]     The statute of limitations for Plaintiffs' § 1983 action is borrowed from state law, and is provided by Okla. Stat. tit. 12, § 95(A)(3).  *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Meade v. Grubbs*, 841 F.2d 1512, 1523-24 (10th Cir. 1988); *see also Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004).

[5]     Plaintiffs also argue that the accrual of their § 1983 claims was delayed by operation of a state law discovery rule.  However, federal law governs the accrual of a § 1983 claim.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004).  "In general, under the federal discovery rule, claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.  In particular, a civil rights action accrues when facts that would support a cause of action are or should be apparent." *Alexander*, 382 F.3d at 1215 (internal quotations and citations omitted).  "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir.

Regarding the timeliness of Plaintiffs' § 1983 claims, the Court recently addressed this issue in ruling on a Rule 12(b)(6) motion filed by the nurses and the private contractor that provided medical care to Mr. Autry at CCDC. *See* 2/5/18 Order [Doc. No. 106] (hereafter, the "February 5 Order"] at 9-13. Upon consideration, the Court found that Plaintiffs have alleged sufficient facts in the Second Amended Complaint to support tolling under Oklahoma law based on a legal disability of Mr. Autry. For the same reasons stated in the February 5 Order, the Court finds that Mr. Autry's § 1983 claim against NRH should not be dismissed as untimely at this stage of the case.

The Court also determined, however, that Mr. Autry's legal disability would not toll the limitations period for Ms. Valentine's § 1983 claim. *See* February 5 Order at 13-14. It is unclear whether Ms. Valentine asserts a § 1983 claim against NRH in Count 5 of the Second Amended Complaint, but it is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). Thus, any § 1983 claim asserted by Ms. Valentine must be her own, and a legal disability of her son would not toll the running of the statute of limitations applicable to her claim.[6] Any § 1983 claim that Ms. Valentine may have against NRH is based on conduct that occurred

---

1998) (internal quotation and citation omitted). In this case, Plaintiffs knew of any constitutional violation related to Mr. Autry's emergency room care, at the latest, when he suffered debilitating injuries as an alleged result of the lack of appropriate treatment. The Second Amended Complaint contains no factual allegations to show otherwise.

[6] Further, an Oklahoma appellate court has held that § 96 does not preserve a parent or guardian's individual claim to recover medical expenses incurred on behalf of an injured child or ward. *See Brown v. Jimerson*, 862 P.2d 91, 93 (Okla. Civ. App. 1993).

November 29, 2014.  Ms. Valentine articulates no theory of tolling that would save her claim from the two-year time bar that expired before her action against NRH was filed by joining it in the Second Amended Complaint on January 4, 2017.  Therefore, the Court finds that Ms. Valentine's § 1983 claim, if any, against NRH is time barred, and must be dismissed.[7]

### 2.    Failure to State a Plausible Claim

Both NRH and Dr. Rea challenge the sufficiency of Plaintiffs' factual allegations to state a § 1983 claim against them.   NRH admits it is a public trust hospital "deemed a political subdivision of the State and acting under color of [state] law" for purposes of § 1983, but asserts that its § 1983 liability requires Plaintiffs to establish a basis for municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978).   *See* Def. NRH's Mot. [Doc. No. 69] at 6 & n.1.   NRH contends the Second Amended Complaint fails to allege any factual basis for municipal liability, which requires the existence of an official policy that caused the alleged injury.[8]   Dr. Rea asserts that the Second Amended Complaint states no factual basis for Plaintiffs' conclusory allegation that he was acting under color of state law in providing emergency medical treatment to Mr. Autry.   *See* Def. Rea's Mot. [Doc. No. 79] at 5.   Dr. Rea and NRH also

---

[7]   Dr. Rea does not raise any time bar issue and, therefore, the Court does not address the timeliness of Ms. Valentine's § 1983 claim against Dr. Rea, if any is asserted.

[8]   *See Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) ("Municipalities can be liable under 42 U.S.C. § 1983 only for their own unlawful acts.   Accordingly, to prove a § 1983 claim against a municipality, a plaintiff must show the existence of a municipal policy or custom which directly caused the alleged injury.") (citation omitted).

contend Plaintiffs' factual allegations fail to show unconstitutional conduct and the "allegations, at most, constitute medical negligence." *See* Def. Rea's Mot. at 5; *accord* Def. NRH's Mot. at 7.

### a. Dr. Rea's Liability

Mr. Autry's § 1983 claim is based on an alleged violation of his right as a pretrial detainee to constitutionally adequate medical care by persons acting under color of state law. Dr. Rea first denies that Plaintiffs have sufficiently alleged he was a state actor, acting under color of state law. This argument ignores allegations that Dr. Rea provided Mr. Autry's emergency medical treatment on behalf of a public trust hospital, which was admittedly a state actor. Regardless whether Dr. Rea was working for NRH as an employee or a contractor, Plaintiffs' allegations that he was acting on behalf of a public trust are sufficient to support a finding that he was acting under color of state law while treating NRH's emergency room patients. *See*, *e.g.*, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003) (private contractor acting for the government carrying out a public program is a person acting under color of state law); *see also Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991) (private entity and its employee acting on behalf of public hospital were state actors). The Court finds the Second Amended Complaint sufficiently alleges that Dr. Rea was acting under color of state law to state a § 1983 claim against him.

The applicable constitutional standard prohibits deliberate indifference to an inmate's serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[9] A § 1983 claim of deliberate indifference to a serious medical need has both objective and subjective components. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective component requires a plaintiff to show the existence of a medical need that was "sufficiently serious." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Al-Turki*, 762 F.3d at 1192-93. The subjective component requires a showing that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. To satisfy the subjective component "requires the prison official to disregard the risk of harm claimed by the prisoner." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009).

Where a medical professional is involved, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment," such as deciding "whether to consult a specialist or undertake additional medical testing." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). The standard is satisfied "where the need for additional treatment or referral to a medical specialist is obvious" but ignored, such as where "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency." *Id*.

---

[9] A pretrial detainee's right to medical care arises from the Due Process Clause of the Fourteenth Amendment, but the deliberate indifference standard of the Eighth Amendment applies. *See Rife v. Okla. Dep.'t of Pub. Safety*, 854 F.3d 637, 647 (10th Cir.), *cert. denied sub nom.*, 138 S. Ct. 364 (2017); *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014).

In this case, Dr. Rea challenges the sufficiency of Plaintiffs' allegations to satisfy the subjective component of the deliberate indifference standard; he does not question that Mr. Autry's medical need was sufficiently serious. The claimed risk of harm arises from Mr. Autry's pre-existing condition combined with a sinus infection that had developed while Mr. Autry was detained at CCDC. Dr. Rea's assertion that the Second Amended Complaint does not show conduct that would amount to deliberate indifference presents a close question. Viewing Plaintiffs' allegations in the light most favorable to Mr. Autry, however, the Court finds that deliberate indifference could be found from the alleged facts that Dr. Rea knew but ignored Mr. Autry's prior medical history and so failed to diagnose and treat a life-threatening medical condition that a physical examination or diagnostic procedures would have revealed. Plaintiffs' allegations, if proven, could support a finding that Dr. Rea acted with an extraordinary degree of neglect, and satisfy the subjective component of deliberate indifference.

Upon consideration of facts alleged in the Second Amended Complaint, the Court finds minimally sufficient allegations to show that Dr. Rea acted with deliberate indifference to Mr. Autry's serious medical need. Therefore, the Court finds that the Second Amended Complaint states a plausible § 1983 claim against Dr. Rea.

### b.      NRH's Liability

NRH asserts, correctly, that it is not vicariously liable for any constitutional violation committed by Dr. Rea, or any other emergency room worker, but that Mr. Autry must satisfy the *Monell* doctrine to state a plausible § 1983 claim against NRH. The court of appeals has summarized the doctrine as follows:

> [A] plaintiff must show the existence of [an official] policy or custom which directly caused the alleged injury. A policy or custom includes a formal regulation or policy statement, an informal custom that amounts to a widespread practice, decisions of municipal employees with final policymaking authority, ratification by final policymakers of the decisions of subordinates to whom authority was delegated, and the deliberately indifferent failure to adequately train or supervise employees.

*Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citation omitted). "[T]he longstanding interpretation of § 1983's standards for imposing municipal liability" requires that "a plaintiff must identify a . . . policy or custom that caused the injury" and "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep.'t*, 717 F.3d 760, 769 (10th Cir. 2013) (internal quotations omitted). For causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Id*. at 770 (internal quotation omitted).

Upon examination of the Second Amended Complaint, the Court finds no allegation that NRH had a deficient policy or custom regarding emergency room care of inmates or that any such deficiency caused Mr. Autry to be denied appropriate medical diagnosis and treatment. Plaintiffs wholly fail to address this issue in their response brief, simply arguing in a conclusory manner that NRH "can be sued for its wrongful actions or omissions" in failing to diagnose and treat Mr. Autry's medical need. *See* Pl.'s Resp. Def. NRH's Mot. [Doc. No. 94] at 13-14. Therefore, the Court finds that the Second Amended Complaint fails to state a plausible § 1983 claim against NRH based on a denial of medical care to Mr. Autry.

**B.     EMTALA**

NRH seeks the dismissal of Plaintiffs' EMTALA action as time barred by the two-year statute of limitations of 42 U.S.C. § 1395dd(d)(2)(C).   Unlike § 1983 claims, state law tolling rules and exceptions for legal disability do not apply to Plaintiffs' EMTALA action.   *See Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 866 (4th Cir. 1994) ("state law tolling provisions cannot toll the running of EMTALA's two-year statute of limitations"); *Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir. 1994) (EMTALA's "statute of limitations runs against all persons, even those under a disability" because it contains no exception).

Plaintiffs' only argument regarding the timeliness of their EMTALA claims is that the Second Amended Complaint should be deemed to relate back pursuant to Fed. R. Civ. P. 15(c)(1) to the date of the Complaint filed October 15, 2015.   *See* Pls.' Resp. Br. Def. NRH's Mot. at 8-9.   This argument ignores the requirements for relation-back under Rule 15(c)(1)(C), and plainly lacks merit.   Because NRH and Dr. Rea were added as parties by the Second Amended Complaint, the only relation-back provision that could apply is Rule 15(c)(1)(C), formerly Rule 15(c)(3).   *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).   By its terms, Rule 15(c)(1)(C) requires an amended pleading that "changes the party or the naming of the party against whom a claim is asserted" and the satisfaction of certain conditions, including that "the party to be brought in by amendment received notice of the action" "within the time period provided by Rule 4(m) for serving the summons and complaint."   *See* Fed. R. Civ. P. 15(c)(1)(C)(i).   Neither NRH nor Dr. Rea was named in the original Complaint, and neither is alleged to have received notice

of the action within the time limit for service of the Complaint. Therefore, Rule 15(c)(1) does not apply, and relation-back is not authorized.

EMTALA's provision for a civil action by a person injured by a violation states: "No action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(C). Thus, Plaintiffs had two years form the date of the alleged violation on November 29, 2014, to bring an EMTALA action. Plaintiffs first filed suit under the statute by adding their EMTALA claim in the Second Amended Complaint filed January 4, 2017. Therefore, Plaintiffs' EMTALA action is time barred and must be dismissed.[10]

## C. State Law Negligence Claims

### 1. Timeliness

Regarding a state law tort action, NRH contends, and Plaintiffs do not disagree, that any claim against NRH is governed by the GTCA, which imposes statutory prerequisites to suit that must be satisfied to overcome the sovereign immunity enjoyed by a political subdivision of the State of Oklahoma. The Second Amended Complaint fails to allege that Plaintiffs complied with the notice and timeliness requirements of the GTCA, and this failure alone could warrant the dismissal of Plaintiffs' tort claims against NRH. *See Hall v. GEO Grp., Inc.*, 324 P.3d 399, 401, 404 (Okla. 2004) (case "must be dismissed as

---

[10] Dr. Rea asserts that he is not a proper party to Plaintiffs' EMTALA claim because only "a participating hospital" can be sued in an action under § 1395dd(d)(2)(A). Plaintiffs agree. *See* Pls.' Resp. Def. Rea's Mot. [Doc. No. 95] at 8-9 ("[There is no private cause of action [under EMTALA] against an individual physician. The proper party is [NRH].") . For this additional reason, Plaintiffs' EMTALA action against Dr. Rea should be dismissed.

untimely") ("Compliance with the statutory notice provisions of the GTCA is a jurisdictional requirement to be completed prior to the filing of any pleadings. The record before us does not show that [plaintiff] has complied with the notice provisions of the GTCA, nor does he allege that he has complied.") (footnotes omitted).

However, NRH does not rely on this omission in the Second Amended Complaint. Instead, NRH admits receiving timely notice of a tort claim on November 13, 2015, and submits a copy of the notice. *See* Def. NRH's Mot, Ex. 1 [Doc. No. 69-1].[11] By operation of the GTCA, the notice was deemed denied 90 days later on February 11, 2016, and Plaintiffs were required to file suit within 180 days thereafter, or by August 9, 2016. No action was filed until Plaintiffs added NRH to this suit on January 4, 2017, over four months too late.

Plaintiffs do not deny their untimeliness but argue that the GTCA is silent on the issue of a plaintiff's incapacity or legal disability and thus the tolling statute of Okla. Stat. tit. 12, § 96, should apply.[12] Plaintiffs are mistaken. The notice provisions of the GTCA address tolling due to incapacity from injury and expressly limit tolling to 90 days. *See* Okla. Stat. tit. 51, § 156(E) ("The time for giving written notice of claim pursuant to the

---

[11] Notably, the only claimant listed in the notice is "Robert Allen Autry c/o Guardian Sandra Lynn Valentine." Thus, no claim on behalf of Ms. Valentine individually was preserved.

[12] Plaintiffs also urge their relation-back argument, discussed *supra*. See Pls.' Resp. Def. NRH's Mot. at 7-8. In addition to Rule 15(c)(1)(C), a state law claim may relate back if state law "allows relation back." *See* Fed. R. Civ. P. 15(c)(1)(A). Because the statute and federal rule are "virtually identical," the Oklahoma Supreme Court "rel[ies] on federal authority for guidance" and "ha[s] adopted the construction placed upon it by the federal courts." *See Pan v. Bane*, 141 P.3d 555, 558-59 (Okla. 2006). The Court's determination that Plaintiffs' federal claims against these defendants do not relate back to the original Complaint applies equally to the negligence claims.

provisions of this section does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity."). Further, the Oklahoma Supreme Court has held that the general tolling statute, § 96, does not apply to an action under the GTCA. *See Hall*, 324 P.3d at 405 ("where the GTCA includes specific provisions, the general statute of limitations does not apply"). Therefore, Plaintiffs' tort action against NRH is untimely and must be dismissed.[13]

### 2.    Supplemental Jurisdiction

Dr. Rea urges the Court to decline supplemental jurisdiction over Plaintiffs' negligence claims pursuant to 28 U.S.C. § 1367(d)(3) if all federal claims are dismissed. Because the Court has determined that Plaintiffs' § 1983 action against Dr. Rea under the Second Amended Complaint should proceed, this argument does not support dismissal of the action against Dr. Rea.

### Opportunity for Amendment

Plaintiffs have made no motion, or even an informal request, to further amend their pleading if it is found to be deficient. Further, prior opportunities for amendment have

---

[13] Dr. Rea does not assert that Plaintiffs' tort claims against him are governed by the GTCA, nor challenge the timeliness of Plaintiffs' medical negligence action. The Oklahoma Supreme Court has held that "the procedural requirements of the [GTCA] for presenting claims to governmental entities do not apply to tort claims against a governmental employee when plaintiff's claim is based upon allegations that the employee's acts were outside the scope of his or her employment" so the claim is beyond the reach of the statute. *See Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 540 (Okla. 2003). The statute of limitations for medical malpractice actions expressly provides that "minority or incompetency when the cause of action arises will extend said period of limitation." Okla. Stat. tit. 76, § 18.

failed to yield a fully sufficient pleading, and the deadline set by the Scheduling Order expired long ago.   Under these circumstances, the Court finds that Plaintiffs have failed to show "justice so requires" leave to amend.   *See* Fed. R. Civ. P. 15(a)(2).

## Conclusion

For the reasons set forth above, the Court finds that the Second Amended Complaint fails to state a claim on which relief can be granted under § 1983 or state law against NRH, and fails to state a claim under EMTALA against any defendant.   However, the Second Amended Complaint states a plausible § 1983 claim against Dr. Rea, and the state law negligence action against him should not be dismissed.

IT IS THEREFORE ORDERED that Defendant Norman Regional Hospital Authority d/b/a Norman Regional Hospital's Motion to Dismiss Second Amended Complaint [Doc. No. 69] is GRANTED and Defendant Marshall L. Rea, D.O.'s Motion to Dismiss [Doc. No. 79] are GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 12th day of February, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE